BINGHAM MCCUTCHEN LLP
Geoffrey M. Howard (SBN 157468)
geoff.howard@bingham.com
Marjory Gentry (SBN 240887)
marjory.gentry@bingham.com
Chad Russell (SBN 246046)
chad.russell@bingham.com
Three Embarcadero Center
San Francisco, California  94111-4067
Telephone:     415.393.2000
Facsimile:     415.393.2286

Mary T. Huser (SBN 136051)
mary.huser@bingham.com
1117 S. California Avenue
Palo Alto, CA 94304-1106
Telephone:     650.849.4400
Facsimile:     650.849.4800

ORACLE CORPORATION
Deborah K. Miller (SBN 95527)
deborah.miller@oracle.com
Jennifer Gloss (SBN 154227)
jennifer.gloss@oracle.com
500 Oracle Parkway
M/S 5op7
Redwood City, CA 94065
Telephone:     650.506.4846
Facsimile:     650.506.7114

Attorneys for Plaintiffs Oracle America, Inc.,
and Oracle International Corp.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>CEDARCRESTONE, INC., a Delaware corporation,<br><br>Defendant. | No. 12-cv-04626-NC<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**(1) COPYRIGHT INFRINGEMENT;**<br>**(2) BREACH OF CONTRACT;**<br>**(3) UNFAIR COMPETITION; AND**<br>**(4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Oracle America, Inc. ("Oracle America") and Oracle International Corporation ("OIC") (together "Oracle") for their First Amended Complaint against Defendant CedarCrestone, Inc. ("CedarCrestone") allege as follows based on their personal knowledge as for themselves, and on information and belief as to the acts of others:

## I.      INTRODUCTION

1.      CedarCrestone was an Oracle "partner."  For roughly seven years, Oracle valued its relationship with CedarCrestone and worked with CedarCrestone for the benefit of mutual customers.  Oracle has now learned that, all the while proclaiming itself a faithful Oracle partner, CedarCrestone instead used its partnership status and trust to misappropriate Oracle's intellectual property.  CedarCrestone profited from the intellectual property it took without permission by selling infringing, unauthorized software updates for Oracle's PeopleSoft-branded software.  It then cross-sold those customers into CedarCrestone's other service offerings.

2.      CedarCrestone's infringement spanned several years.  It created at least fifty unauthorized reproductions of Oracle's PeopleSoft software in the form of "environments," or installations of PeopleSoft applications.  CedarCrestone then made further copies of these environments and used them to support multiple customers—conduct that no license allows.  CedarCrestone relied upon these infringing environments to generate updates for PeopleSoft software.  It then re-sold these updates at steep discounts to unsuspecting customers who simply thought they were getting—because CedarCrestone falsely advertised so—proper support authorized by Oracle through an Oracle partner.

3.      CedarCrestone's updates bear the tell-tale fingerprints of infringement. CedarCrestone regularly sold updates to PeopleSoft software that consisted almost entirely of Oracle's copyrighted software code, complete with copyright notices and prohibitions against copying the code.  CedarCrestone would regularly download Oracle's own updates, authorized for use only by Oracle's paying customers, from Oracle websites.  CedarCrestone would then send copies of the downloaded file, only slightly modified, if at all, to multiple customers—even to customers with no rights to receive the Oracle updates.  Even though it regularly copied Oracle's code without permission as the basis for its updates, CedarCrestone would falsely claim

2

1    to its customers to have developed the updates independently.

2           4.     CedarCrestone had access to Oracle's intellectual property because it was

3    an individual PeopleSoft licensee and a long-time Oracle partner.  Because CedarCrestone knew

4    it could not legally copy, cross-use, and distribute Oracle's copyrighted software, it went to great

5    lengths to conceal its activity from Oracle.  Although CedarCrestone's partnership agreement

6    with Oracle required CedarCrestone to proactively disclose any "actual, apparent, or potential

7    violation" of the Ethics Code, including the misuse of Oracle's intellectual property,

8    CedarCrestone never told Oracle that it made dozens of local copies of its own or its customers'

9    PeopleSoft software, then cross-used those copies to support multiple customers.  Although

10   Oracle and CedarCrestone worked together closely on many joint projects, CedarCrestone admits

11   that it did not disclose its improper reproduction, modification, and distribution of Oracle's

12   PeopleSoft software to Oracle, presumably out of fear of jeopardizing its lucrative partner status

13   with Oracle.

14          5.     Further, upon information and belief, CedarCrestone monitored Oracle's

15   very public litigation with rival SAP involving the same type of conduct alleged in this lawsuit.

16   In the SAP litigation, SAP and its subsidiary TomorrowNow admitted to civil copyright

17   infringement and TomorrowNow pled guilty to criminal copyright infringement for maintaining

18   infringing copies of Oracle's PeopleSoft software on its systems, among other things.  Despite

19   the well-publicized allegations by Oracle, and the then-pending criminal investigation by the

20   Department of Justice, CedarCrestone attempted to *buy* TomorrowNow from SAP in order to

21   enhance CedarCrestone's own, similar support offering.  At the time, CedarCrestone knew that

22   the TomorrowNow assets likely included vast quantities of infringing intellectual property.

23   When SAP shut down TomorrowNow, former TomorrowNow customers signed up for the same

24   service from CedarCrestone they had received from TomorrowNow.  Though it knew about the

25   allegations directed to SAP and TomorrowNow, CedarCrestone nevertheless further copied and

26   modified TomorrowNow's infringing software copies to support the former TomorrowNow

27   customers, and perhaps others.

28          6.     All along, CedarCrestone kept Oracle in the dark as to its actual support

3

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

offerings, posing as a loyal, honest partner. In late 2011, CedarCrestone sent Oracle a letter disclosing that it had downloaded software updates for one client which had no right to receive them. In the aftermath of the SAP litigation, which by then had resulted in a $1.3 billion copyright infringement verdict against SAP, CedarCrestone intended the letter to assure Oracle. In the letter, CedarCrestone made clear (falsely) that it would stop any illegal practices if it discovered them. CedarCrestone never mentioned that its entire business model depended on the same type of illegal software copies and cross-use as CedarCrestone had disclosed and claimed to stop in the 2011 letter.

7.     Oracle later obtained copies of certain software updates CedarCrestone had distributed to its clients. The updates showed, as a CedarCrestone corporate witness later confirmed under oath, that CedarCrestone made local copies of Oracle's copyrighted PeopleSoft software and continued to reproduce and modify those copies to support multiple other customers. Caught, CedarCrestone decided to shut down its PeopleSoft software update support business (also without telling Oracle) rather than defend it.

8.     CedarCrestone used its partnership status with Oracle to attract customers to whom it could provide services using misappropriated software. In doing so, CedarCrestone interfered with Oracle's customer relationships and unfairly competed against Oracle. Oracle must now resort to the legal process to protect its intellectual property and ensure the integrity of its partnership network. This case is about stopping CedarCrestone's illegal conduct and compensating Oracle for the harm that conduct has caused.

## II.     THE PARTIES

9.     Plaintiff Oracle America is a Delaware corporation duly authorized to do business in the State of California, with its principal place of business in Redwood City, California. Oracle America develops and licenses certain intellectual property, including copyrighted enterprise software programs, and provides related services. Oracle America is the successor, through Oracle USA, Inc., to PeopleSoft USA, Inc. ("PeopleSoft"). Oracle America is a subsidiary of Oracle Corporation.

10.     Plaintiff OIC is a California corporation, with its principal place of

4

business in Redwood City, California.  OIC owns and licenses certain intellectual property, including copyrighted enterprise software programs used around the world.  Intellectual property rights formerly held by certain PeopleSoft entities were transferred to OIC as part of the acquisition of PeopleSoft by Oracle Corporation.  OIC is the owner or exclusive licensee of the copyrights at issue in this action.  OIC is a subsidiary of Oracle Corporation.

11.     Defendant CedarCrestone is a Delaware corporation with its principal place of business in Alpharetta, Georgia.  In 2011, CedarCrestone was acquired by Golden Gate Capital, an investment company with over $12 billion of capital under its management.  Until Oracle terminated the partnership, CedarCrestone was a member of the Oracle PartnerNetwork ("OPN"), having renewed its membership most recently in November 2011 by agreeing to the terms of the Oracle PartnerNetwork Worldwide Agreement (the "OPN Agreement").

## III.     JURISDICTION

12.     Oracle's first cause of action arises under the federal Copyright Act, 17 U.S.C. § 101 *et seq.*  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

13.     Oracle's fourth cause of action for unfair competition is substantial and related to its cause of action for copyright infringement.  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(b).

14.     This Court has supplemental subject matter jurisdiction over Oracle's second, third, and fifth causes of action pursuant to 28 U.S.C. § 1367 because they are so related to Oracle's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

15.     CedarCrestone is subject to personal jurisdiction in California because it has committed wrongful intentional acts, expressly aimed at Oracle, which CedarCrestone knew or should have known is a resident of California.  CedarCrestone also caused harm that it knew or should have known Oracle would suffer in Redwood City, California.  CedarCrestone also agreed to personal jurisdiction in this District in contracts with Oracle, including the OPN

Agreement and Full Use Distribution Agreement which Oracle alleges CedarCrestone breached.

## IV. VENUE

16. Venue in this District is appropriate because CedarCrestone has agreed to personal jurisdiction and venue in this District in contracts with Oracle, including the OPN Agreement and Full Use Distribution Agreement which Oracle alleges CedarCrestone breached.

17. Venue in this District is also appropriate because CedarCrestone committed wrongful intentional acts, expressly aimed at Oracle, which CedarCrestone knew or should have known is a resident of this District. CedarCrestone also caused harm that it knew or should have known Oracle was likely to suffer in this District. As a result, CedarCrestone would be amenable to personal jurisdiction if this District were a separate state, and therefore venue in this District is appropriate pursuant to 28 U.S.C. § 1400(a).

## V. INTRADISTRICT ASSIGNMENT

18. This action alleges, among other things, claims for copyright infringement. It is an intellectual property action and may be assigned on a district-wide basis pursuant to Civil L.R. 3-2(c).

## VI. FACTUAL ALLEGATIONS

### A. Oracle's Enterprise Software Applications And Support Materials

19. Oracle is the world's leading supplier of enterprise hardware and software systems, and related technical support and consulting services for those systems. It is the first enterprise software company to receive J.D. Power & Associates' global certification for outstanding service and support based on measuring customer satisfaction worldwide. Oracle develops, manufactures, markets, distributes, and services software designed to help its customers manage and grow their business operations. Oracle's enterprise software and technology offerings include database, middleware, and applications software programs.

20. As is typical in the enterprise software industry, Oracle does not sell ownership rights to its software or related support products to its customers. Instead, Oracle's customers purchase licenses that grant them limited rights to use specific Oracle software

1   programs, with Oracle retaining all copyright and other intellectual property rights in these

2   works. In addition, licensed customers can, and typically do, purchase technical support services

3   related to the purchased software licenses. Those services include limited rights to use product

4   improvements to the software programs the customers have expressly licensed from Oracle and

5   have the right to use for purposes authorized by Oracle. Product improvements include tax and

6   regulatory updates, bug fixes, and patches.

7          **B.     Both Oracle And CedarCrestone Provide Support Services For
                     Oracle's PeopleSoft-Branded Enterprise Software Applications**

8

9          21.    In the world of enterprise software applications, revenue typically comes

10  from three categories of activities: (a) licensing of software applications; (b) consulting relating

11  to the implementation and operation of licensed software applications; and, (c) support services

12  related to keeping the software applications updated and upgraded.

13         22.    Oracle's PeopleSoft family of applications includes PeopleSoft Human

14  Resources Management Software ("HRMS"), also known as Human Capital Management;

15  PeopleSoft Financials and Supply Chain Management ("FSCM"), also known as Financials,

16  Distribution and Manufacturing; and PeopleSoft Student Administration, also known as Campus

17  Solutions. Oracle's Lifetime Support Policy for the PeopleSoft family of applications includes

18  access to Oracle's major product and technology releases, access to Oracle's online and

19  telephone support, and access to product updates. Oracle's Lifetime Support Policy defines a

20  period of time, for each version of each PeopleSoft application, during which Oracle commits to

21  create new product updates for that application version. Product updates include tax and

22  regulatory updates designed to ensure that Oracle's PeopleSoft customers can run payroll

23  processes, generate year-end tax forms, and administer financial aid in compliance with evolving

24  laws and regulations.

25         23.    Although it now says it has discontinued its PeopleSoft tax and regulatory

26  support services, up until recently CedarCrestone, like Oracle, provided support services for

27  certain of Oracle's PeopleSoft family of applications. In doing so, CedarCrestone competed with

28  Oracle for tax and regulatory update business by providing tax and regulatory update support to

customers who would typically pay Oracle for support services related to their licensed Oracle software.

24. Some of CedarCrestone's tax and regulatory update support customers continued to pay Oracle support. CedarCrestone claims that it generated updates for these customers by copying Oracle-issued, copyrighted, tax and regulatory updates for more recent releases of PeopleSoft software. CedarCrestone then modified those Oracle updates for distribution to customers on older Oracle releases. Other CedarCrestone customers discontinued their Oracle support. For these customers, CedarCrestone falsely claims that it generated all updates "independently," without reproduction of or reference to Oracle-issued updates.

25. CedarCrestone claims that its support services for PeopleSoft software included, at a minimum, tax and regulatory update support for (a) PeopleSoft HRMS customers no longer on Oracle support, called "Extend Support" or "Extended Tax Support"; (b) PeopleSoft HRMS customers that continue to receive Oracle support, called "Retro Support" or "Retro Tax Support"; (c) PeopleSoft FSCM customers, called "1099 Support" and available both to customers no longer on Oracle support and customers that continue to receive Oracle support; and (d) PeopleSoft Student Administration customers that continue to receive Oracle support, called "Regs & Legs Support." CedarCrestone also claims that some customers who received tax and regulatory support from CedarCrestone also contracted for "break/fix support," which may have included troubleshooting and customization of PeopleSoft software.

26. CedarCrestone describes the PeopleSoft offerings listed in paragraphs 23-25, as CedarCrestone's "Maintain Services." Maintain Services include tax and regulatory update support offerings for HRMS, tax and regulatory update support offerings for FSCM, tax and regulatory update support offerings for Student Administration, and break/fix support for any of these PeopleSoft applications.

**C.** **CedarCrestone Reproduces, Modifies, And Distributes Oracle's Copyrighted Software And Support Materials Without Authorization**

27. CedarCrestone admits that no agreement between Oracle and CedarCrestone authorized CedarCrestone's provision of Maintain Services.

8

28.     CedarCrestone knows that licenses to PeopleSoft software provide only limited rights to reproduce, distribute, and modify the software because CedarCrestone *is a PeopleSoft licensee*.  CedarCrestone's March 16, 2010 proposal to prospective customer The Oklahoma City Municipal Facilities Authority (the "OKC Proposal") states that "CedarCrestone is an Oracle client with more than 20 modules in production, across the following [PeopleSoft] application suites:  Human Capital Management, Financial Management, Customer Relationship Management, and Enterprise Portal."  And, as CedarCrestone admits, the terms of its license for PeopleSoft software prohibit CedarCrestone from providing software and support materials acquired for its own internal use to third parties, including its customers.

29.     CedarCrestone has additional institutional knowledge of the restrictions contained in licenses for PeopleSoft products because "it has seen a lot of Oracle license agreements through the years," including license agreements provided by resellers of Oracle's PeopleSoft products.

30.     Oracle's customer license agreements for the PeopleSoft software at issue in this case all contain restrictions on reproducing, distributing, creating derivative works from, accessing, and using the licensed software.  One such restriction in an illustrative PeopleSoft license agreement states that the customer's licensed software may be used "solely for the Licensee's internal data processing operations."  Many licenses specifically restrict the number of software copies that a licensee may make.  These licensing restrictions help Oracle to protect its significant investment in research and development, which results in continuous enhancement of its products for the benefit of its customers.

31.     CedarCrestone ignores these license restrictions when performing its Maintain Services.  When CedarCrestone generates updates for its customers, it claims to act as a "designate" pursuant to the customer's PeopleSoft license, referencing specifically the language in CedarCrestone's own PeopleSoft license.  However, PeopleSoft license agreements, including CedarCrestone's, typically specify that "[i]n no event shall a Designate have the right to (i) install the Software on a server or (ii) access the source code of the Software."  If CedarCrestone is a "designate" (as it claims), then it may not create copies of Oracle's software

9

1   on CedarCrestone's computers or use Oracle's software to perform Maintain Services (as it did).

2         32.     Although CedarCrestone knew of these and other license restrictions,

3   CedarCrestone routinely made unauthorized copies of Oracle's software applications when

4   providing its Maintain Services, as explained in further detail below, through actions including:

5   (a) reproducing PeopleSoft software applications on CedarCrestone's own computer systems, or

6   "local environments"; (b) reproducing PeopleSoft software by making copies of PeopleSoft

7   environments without authorization; (c) creating derivative works by modifying installations of

8   PeopleSoft software without authorization; (d) reproducing protected expression from Oracle's

9   copyrighted software and support materials (including Oracle source code and schemas) without

10  authorization; (e) distributing protected expression from Oracle's copyrighted software and

11  support materials in the form of updates without authorization; (f) creating derivative works that

12  embodied protected expression from Oracle's copyrighted software and support materials in the

13  form of updates without authorization; and, (g) reproducing, modifying, and distributing

14  infringing copies of Oracle software previously made by TomorrowNow, Inc.

15       **1.**     **CedarCrestone unlawfully reproduces PeopleSoft**

16             **application software**

17       *Environments*

18        33.     CedarCrestone regularly installed entire PeopleSoft applications on its

19  own computers, creating local environments.  CedarCrestone has created at least fifty

20  environments to support its Maintain Services for HRMS and Student Administration alone.  A

21  typical environment contains all or virtually all of the protectable expression found in PeopleSoft

22  application software and in PeopleTools, Oracle's copyrighted utility software that serves as the

23  "engine" for PeopleSoft applications.

24        34.     CedarCrestone reproduces the Oracle software, in the form of local

25  environments, present on its computer systems repeatedly when providing Maintain Services,

26  including through creation of ephemeral copies of portions of an environment in RAM by virtue

27  of running and interacting with the environment.

28        35.     On information and belief, CedarCrestone creates additional, unlicensed

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    copies of these local environments whenever it creates backup copies of an environment and

2    whenever it restores those copies.

3         36.    CedarCrestone's local environments, and the additional copies

4    CedarCrestone makes from them, infringe Oracle's copyrights.  These local copies are not

5    permissible copies of a customer's licensed software, under either the customers' licenses with

6    Oracle or any agreement between Oracle and CedarCrestone.  Nor could CedarCrestone employ

7    a "service bureau arrangement" where CedarCrestone's own licensed software would support a

8    customer's internal business operations, as CedarCrestone's PeopleSoft software license

9    expressly forbids such arrangements.

10        37.    Furthermore, some, and perhaps all, of CedarCrestone's local

11   environments are not for the benefit of any particular customer, but instead support multiple

12   customers.  CedarCrestone supported customers Nike and Advanced Group from a shared

13   environment.  CedarCrestone also supported customers Hewitt (Rogers) and PMI from a shared

14   environment.  It also supported four other customers using a single, shared environment.

15   CedarCrestone's tax and regulatory updates reveal the existence of at least five more shared

16   environments on CedarCrestone's computer systems that CedarCrestone regularly used to

17   support multiple customers.  Because this kind of cross-use violates any potentially applicable

18   PeopleSoft license, CedarCrestone's local environments infringe Oracle's copyrights on this

19   independent basis.

20        38.    CedarCrestone illegally supports multiple customers with even those of its

21   local environments ostensibly dedicated to a single customer.  By way of example, almost all of

22   the local environments allegedly dedicated to individual CedarCrestone customers on Extended

23   Tax Support were used to generate at least one tax and regulatory update for a different

24   customer.  No customer's license permits CedarCrestone to reproduce that customer's licensed

25   PeopleSoft software to support a second customer.

26        39.    Each creation of backup copies, ephemeral copies, and other additional

27   copies of infringing environments is a further act of copyright infringement, because neither

28   CedarCrestone nor its customers have authorization to reproduce infringing copies of Oracle

11

1    software.

2              40.      CedarCrestone attempted to insulate itself from liability from its

3    customers by obscurely (and incompletely) referencing its practice of supporting customers

4    through shared environments in its Maintain Services offering.  For example, in an October 22,

5    2009 proposal to prospective customer Tucson Unified School District for "Regulatory update

6    support for PeopleSoft HCM 8.8 and Financials 7.5" ("TUSD Proposal") (admitted into evidence

7    as *Oracle v. SAP* Trial Exhibit A-2046), CedarCrestone stated that it "[t]ypically . . . create[s] a

8    new database [and sets up new copies of batch programs] for each Extended Tax client. . . . The

9    only time we would not create a new database for each client is where we have more than one

10   client whose support termination dates are identical and thus have identical demo databases."  As

11   CedarCrestone knows, by virtue of its extensive access to Oracle's software as a trusted Oracle

12   partner, both the "demo database" and the "batch programs" contain substantial amounts of

13   Oracle's protected expression.  This statement by CedarCrestone is misleading because it does

14   not disclose CedarCrestone's actual practice of sharing environments among customers, it does

15   not reference or disclose the license prohibitions against this type of copying and cross-use, and

16   it falsely implies that, by virtue of CedarCrestone's partner status, Oracle has sanctioned the

17   activity CedarCrestone does disclose.  In fact, the copies of updates CedarCrestone distributed to

18   its Maintain Services customers confirm far more than what this misleading disclosure

19   suggested:  CedarCrestone in fact did share local environments, not just for this one customer,

20   but among multiple customers for several years as a standard part of CedarCrestone's Maintain

21   Services updates.

22              *Updates*

23              41.      Most, if not all, Maintain Service updates generated and distributed by

24   CedarCrestone contain exact copies of more than de minimis portions of protected expression

25   from Oracle's copyrighted software and support materials.

26              42.      Many of the PeopleSoft files that CedarCrestone reproduced contained

27   Oracle's copyright notices and prohibitions against copying, such as:

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

```
!********************************************************************
!                                                                  *
!                  Confidentiality Information:                     *
!                                                                  *
! This module contains confidential and proprietary information    *
! of Oracle; it is not to be copied, reproduced, or transmitted    *
! in any form, by any means, in whole or in part, nor is it to     *
! be used for any purpose other than that for which it is          *
! expressly provided under the applicable license agreement.       *
!                                                                  *
! Copyright (C) 2006 Oracle. All Rights Reserved.                  *
!                                                                  *
!********************************************************************
```

43. CedarCrestone infringed Oracle's exclusive reproduction rights to reproduce its copyrighted software and support materials because the updates that CedarCrestone generated contained protected expression from an infringing environment. Neither CedarCrestone nor its customers have any right to make further reproductions of infringing copies of Oracle software.

44. CedarCrestone does not create, test, and package every Maintain Services update for each customer using only non-infringing environments licensed to that customer. To the contrary, CedarCrestone regularly generates its updates using environments and other Oracle software and support materials licensed, if at all, to customers other than the receiving customer. Each Maintain Services update is likely an infringing reproduction of Oracle software, as no customer's license permits CedarCrestone to copy one customer's licensed software for the benefit of additional customers.

45. On information and belief, CedarCrestone "copies and pastes" Oracle source code when creating a Maintain Services update. CedarCrestone's updates contain consistent typographical errors tending to indicate that CedarCrestone created the update once and then subsequently reproduced it for distribution to multiple customers. Whenever CedarCrestone creates an update for one customer by copying and pasting Oracle source code from a second customer's licensed software, that update is an infringing reproduction because no customer's license permits CedarCrestone to copy one customer's licensed software for the benefit of additional customers.

13

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

46.     CedarCrestone admits that comparing the code from one customer's licensed copy of PeopleSoft software to the code in another customer's licensed copy of PeopleSoft software violates intellectual property laws.  On information and belief, CedarCrestone regularly performed code comparisons between copies of different customers' licensed copies of PeopleSoft software.

*Downloads*

47.     CedarCrestone downloads Oracle's application software and updates from Oracle's support websites.  For example, the initial step in CedarCrestone's methodology for providing support for customers that maintain Oracle support (Retrofit Support and Legs & Regs Support) is to download updates previously developed by Oracle from Oracle's password-protected customer support websites.  While CedarCrestone has intimated that it makes a separate download for each customer, in actuality CedarCrestone downloads at most a few copies of each update, and certainly not a separate copy for each customer ultimately receiving derivative updates prepared from these downloads.  CedarCrestone then modifies these downloads and distributes them as the tax and regulatory updates that CedarCrestone delivers to each of its customers on continued Oracle support.

48.     No license or agreement authorizes CedarCrestone to download a single copy of an update for the benefit of multiple customers.  As discussed above, customers' licenses specifically prohibit the customer (or its agents) from using software obtained pursuant to the license to support other parties.  Likewise, CedarCrestone's status as an OPN member allowed CedarCrestone to receive login credentials to access Oracle's secure support website, but only for certain authorized uses.  The OPN Agreement specifies, among other things, that CedarCrestone may not make Oracle property obtained through its OPN membership available to unauthorized third parties or to use this property for "any purpose other than as specified in the OPN policies."  The OPN policies do not allow CedarCrestone to download a single copy of an update on behalf of multiple customers.

49.     The Terms of Use, which restrict access and authorization to the Technical Support websites from which CedarCrestone downloaded the updates, also do not authorize

14

1  CedarCrestone to download a single copy of an update on behalf of multiple clients.  For

2  example, the Terms of Use state that materials downloaded from the website "may not be used to

3  provide services for or to third parties and may not be shared with or accessed by third parties."

4  The Terms of Use further provide that: "the information contained in the Materials [available

5  through the website] is the confidential proprietary information of Oracle.  *You may not use,*

6  *disclose, reproduce, transmit, or otherwise copy in any form or by any means the information*

7  *contained in the Materials for any purpose*, other than to support your authorized use of the

8  Oracle Programs for which you hold a supported licenses from Oracle, without the prior written

9  permission of Oracle." (emphasis supplied).

10         50.    CedarCrestone knew its unlicensed downloading was wrong but attempted

11  to hide it from Oracle.  It never told Oracle it engaged in these practices, and affirmatively

12  indicated it would not tolerate them if discovered.  For example, in a letter dated August 19,

13  2011 and directed to "Sir/Madam" at Oracle Corporation, CedarCrestone admitted that it

14  delivered Oracle tax updates "obtained by CedarCrestone" to customer George Weston Bakeries

15  "throughout the period from November 2008 to August 2011," during which time George

16  Weston Bakeries had no right to receive such updates.  Any downloads of Oracle updates that

17  CedarCrestone performed from November 2008 to August 2011 resulted in unauthorized

18  reproduction of those updates.[1]  Oracle relied on CedarCrestone's confirmation in the letter that

19  it understood that its conduct infringed on Oracle's copyrights and, as a result, CedarCrestone

20  had stopped the illegal activity disclosed in the letter, to mean that CedarCrestone would not

21  engage in similar infringing conduct.  Oracle learned for the first time through CedarCrestone's

22  corporate testimony that the George Weston Bakeries episode was not an isolated incident, but

23  instead reflected a pervasive, ongoing course of illegal conduct.

24

25

26  _____

27  [1] George Weston Bakeries is now known as Bimbo Bakeries.  CedarCrestone has not explained
how it obtained these Oracle-authored updates, including whether it used any customer login
28  credentials to download the updates from Oracle's website(s).

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### 2. CedarCrestone unlawfully creates derivative works from Oracle's PeopleSoft application software and support materials

*Environments as infringing derivative works*

51. On information and belief, all of CedarCrestone's Maintain Services updates for PeopleSoft software are designed to modify customers' PeopleSoft software. Whenever CedarCrestone (or a CedarCrestone customer) applies or implements an update CedarCrestone has generated to a PeopleSoft environment, the resulting, modified environment is a derivative work.

52. A derivative work created by modifying an infringing environment is an infringing derivative work. As discussed above, many, if not all, of CedarCrestone's local environments for Maintain Services are infringing reproductions of PeopleSoft software. Neither CedarCrestone nor its customers have any right to modify infringing copies of Oracle software. Once CedarCrestone (or a CedarCrestone customer) applies a Maintain Services update to an environment, that environment becomes an infringing derivative work.

53. For example, any more than de minimis modification to the shared environment used to support Nike and Advanced Group would create an infringing derivative work because the shared environment is itself an infringing copy of Oracle's PeopleSoft software.

54. An update may itself be an infringing reproduction or an infringing derivative work. When CedarCrestone (or a CedarCrestone customer) applies a more-than-de-minimis modification to an environment, the result is an infringing derivative work.

*Updates as infringing derivative works*

55. As discussed above, most if not all Maintain Services updates contain exact copies of Oracle's copyrighted source code, database schemas, or both. These Maintain Services updates also frequently contain modifications to Oracle's copyrighted, protected expression.

56. No license authorizes CedarCrestone to modify one customer's licensed software and support materials for the benefit of any other customer. On information and belief,

16

CedarCrestone creates one Maintain Services update ostensibly for one customer and then reproduces protected expression from the modified code, through techniques such as cut and paste, to create Maintain Services updates for other customers. Because no applicable license allows such cross-use, the additional updates for other customers are infringing derivative works.

57. CedarCrestone has claimed multiple times, such as in the OKC Proposal, that its tax and regulatory updates for customers not on Oracle support (Extended Tax Support updates) "are developed independently by CedarCrestone" without using Oracle's competing updates "as a starting point." The actual updates produced by CedarCrestone prove that this claim is false.

58. For example, one of CedarCrestone's Extended Tax Support updates includes changes to Oracle's copyrighted source code to enable a specific type of transaction. Far from being developed without reference to Oracle's previously released updates, CedarCrestone's implementation tracked Oracle's own implementation of this functionality so closely that CedarCrestone's update and Oracle's update created essentially identical bugs a clear indicator of software theft.

59. As another example, CedarCrestone has admitted that it delivered Oracle tax updates "obtained by CedarCrestone" to customer George Weston Bakeries "throughout the period from November 2008 to August 2011," during which time George Weston Bakeries had no right to receive such updates. In other words, CedarCrestone did not generate updates for George Weston Bakeries "independently," but instead "obtained" Oracle's competing updates (by downloading them from Oracle's password-protected customer support website) and then sold copies of Oracle's own updates to this customer.

60. As a further example, CedarCrestone modified an Oracle-developed update to apply it to Oracle's PeopleSoft HRMS 7.51 software (a process sometimes known as "retrofitting"). The CedarCrestone retrofit update contained a copy of Oracle's source code from an Oracle-authored file found in a later version of the HRMS software, but that did *not* exist in HRMS 7.51 and was *not* in the Oracle update that CedarCrestone ostensibly modified. On information and belief, the reproduction of the source code from the later version of HRMS was

17

1  unauthorized, meaning that CedarCrestone's retrofit update was an infringing derivative work.

2          **3.     CedarCrestone unlawfully distributes Oracle
3                  PeopleSoft application software and support materials**

4          61.     CedarCrestone distributes its infringing Maintain Services updates to its

5  customers.  Every distribution of an infringing update is an act of unauthorized distribution in

6  violation of Oracle's exclusive rights.

7          **4.     CedarCrestone reproduced, distributed, and modified
8                  infringing materials received from TomorrowNow**

9          62.     In 2008, well after Oracle's litigation against SAP and TomorrowNow had

10  commenced, CedarCrestone attempted to buy TomorrowNow from SAP.  CedarCrestone

11  initiated this potential acquisition during Oracle's very public litigation alleging copyright

12  infringement by SAP and TomorrowNow.  At the time, CedarCrestone must have known that the

13  Department of Justice was investigating TomorrowNow for criminal copyright infringement

14  based on Oracle's allegations.  Thus, CedarCrestone also must have known or suspected that

15  former TomorrowNow customers had received infringing copies of Oracle software and support

16  materials made by TomorrowNow.

17          63.     Despite being on notice that former TomorrowNow customers possessed,

18  and in all likelihood had installed and applied, infringing copies of Oracle software and support

19  materials made by TomorrowNow into the customers' software, CedarCrestone nonetheless

20  offered Maintain Services to at least fifteen former TomorrowNow customers.  CedarCrestone

21  continued to do so *after* TomorrowNow admitted to civil copyright infringement liability in

22  September 2010 and *after* it later pled guilty to criminal copyright infringement in September

23  2011 (in part for having maintained unauthorized copies of Oracle's PeopleSoft software on its

24  systems to support these same customers).  For at least seven of these former TomorrowNow

25  customers, CedarCrestone created distinct environments.  If CedarCrestone followed its own

26  written protocols for creating these environments, CedarCrestone would knowingly have copied

27  infringing reproductions of Oracle software and support materials onto its systems.

28  CedarCrestone further modified these infringing copies, and regularly distributed fixes

18

containing portions of infringing code.  CedarCrestone has further admitted that it has used infringing copies of TomorrowNow's infringing environments to create fixes for customers who had no association with TomorrowNow, such as the 6B_08 fix for Hitchiner Manufacturing generated using a copy of Baker Botts' TomorrowNow environment.

64.     CedarCrestone's reproduction, distribution and modification of TomorrowNow's infringing environments and fixes derived from those environments constitute further acts of infringement, and derived from what CedarCrestone must have known or suspected to be criminally infringing copies of Oracle's software.

**D.     CedarCrestone Has Benefited From Its Acts Of Copyright Infringement**

65.     CedarCrestone's admitted, long-term, repeated, unauthorized reproduction and distribution of Oracle's intellectual property aided the success of CedarCrestone's support services offering.  For example, in determining the price to charge for its Maintain Services, CedarCrestone's price varied from customer to customer depending on what other services that customer purchased from CedarCrestone.  By using its Maintain Services as a lure to sell other products to its customers, CedarCrestone's ability to offer its Maintain Services added value to CedarCrestone's business beyond the profits that CedarCrestone gained directly from these services.

66.     For example, CedarCrestone used its Maintain Services offering to sell CedarCrestone's "hosting" service.  CedarCrestone claims to have over 600 copies of PeopleSoft applications on its servers in support of this separate "hosting" business, allegedly to support only forty-five customers.  Oracle requested that CedarCrestone provide any contracts with its customers or Oracle that would authorize these local environments, but CedarCrestone has not even attempted to respond with respect to the vast majority of the forty-five customers to whom CedarCrestone claims to provide hosting services.  At a minimum, many of these local environments likely exist as a revenue source for CedarCrestone as a result of CedarCrestone's infringing Maintain Services offering.

67.     CedarCrestone also attempted to increase the scope of its Maintain

19

Services through the acquisition of TomorrowNow so that it could "cross sell" CedarCrestone's "consulting and managed services" and hosting services to TomorrowNow's customers.

68.     As another example of how its illegal conduct benefitted CedarCrestone's overall business, CedarCrestone used its "Client Successes" promotional materials to induce new customers to purchase services from CedarCrestone.  CedarCrestone advertised George Weston Bakeries as one of its *only two* "Client Successes" up until at least September 4, 2012, despite having admitted to Oracle in August 2011 that for years CedarCrestone's support of this customer had been based on illegal conduct.  In these promotional materials, CedarCrestone asserted that it had provided George Weston Bakeries "lower cost development options . . . while providing the same level of development expertise and quality guarantees."[2]  In reality, CedarCrestone's "lower cost development option" involved distributing illegal copies of updates developed by Oracle.

69.     The TUSD Proposal explains at least one other way CedarCrestone benefits from this unauthorized cross-use of customer software:  "The first update will be delivered to the client shortly after their database is ready.  This update includes any recent changes that have *already been delivered* to our existing Extended Tax clients but do not yet exist in our new client's database." (emphasis in original)  In other words, CedarCrestone creates these updates using some existing customer's licensed Oracle software, which CedarCrestone apparently has copied and maintains for its own business purposes, then delivers these updates to later-acquired customers and sells that service as an incentive to sign up with CedarCrestone.  The updates produced by CedarCrestone reveal that this practice was not isolated to TUSD, but rather represents an ongoing, pervasive course of conduct that spanned multiple products, customers, and years.  These updates thus consist of copied, modified, and distributed Oracle software code.  The ability to promise prospects a quick—though infringing—first deliverable (previously created and/or copied from another customer's licensed software) helps get more

---

[2] *See, e.g.*, Exhibit 2 to the Declaration of Jason McDonell in Support of Response in Support of Motion to Compel Discovery Concerning Third Party Support Provided by Oracle's Partners, filed by SAP in *Oracle v. SAP*, 3:07-cv-1658, January 27, 2009, Dkt. No. 264-2.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

customers.  Indeed, Tucson Unified School District purchased support services from CedarCrestone after receiving this proposal.

### E.   CedarCrestone Has Actively Concealed Its Infringing Conduct From Oracle

70.     Given the importance to CedarCrestone of continuing to offer its Maintain Services, CedarCrestone has actively concealed from Oracle the infringing methodology it employs in offering the Maintain Services.  Throughout the parties' partnership, no CedarCrestone executive disclosed to an Oracle counterpart that CedarCrestone created and cross-used copies of Oracle software to provide tax and regulatory updates and other support services.  Consistent with this effort to shield its activities from Oracle, on February 26, 2008, Cal Yonker, president and CEO of CedarCrestone contacted Tyler Prince, an Oracle group vice president, stating that CedarCrestone was considering purchasing TomorrowNow and requesting to discuss with Oracle executives whether the acquisition would "be viewed in a negative light by Oracle."  Among CedarCrestone's stated intentions in acquiring TomorrowNow was the opportunity to "[p]rofitably harvest existing contracts in a manner *complying with Oracle licensing rules*." (emphasis supplied).  In making this request, CedarCrestone led Oracle to believe that it was a responsible partner actively seeking to respect Oracle's intellectual property and, consistent with its contractual obligations, would proactively bring to Oracle's attention any potential violations of its agreements with Oracle.

71.     CedarCrestone's representations in its correspondence regarding the contemplated acquisition of TomorrowNow were false and misleading.  Nowhere in this request did CedarCrestone disclose that it offered its Maintain Services in a manner that involved multiple copies of Oracle's PeopleSoft software on CedarCrestone's computers, which CedarCrestone then cross-used to support multiple customers.  Instead, CedarCrestone actively sought to create the (mis)impression that it would only offer services free from any copyright infringement and "complying with Oracle licensing rules."

72.     Similarly, when Oracle responded to CedarCrestone's request stating that it would not discuss CedarCrestone's proposed TomorrowNow acquisition because the "assets"

1    in question were "at the heart of Oracle's lawsuit against SAP and TomorrowNow,"

2    CedarCrestone did not inform Oracle that it was already providing support to at least one former

3    TomorrowNow customer and was in negotiations to provide services to at least two more of

4    TomorrowNow's customers.  CedarCrestone also did not disclose that it provided that support

5    for PeopleSoft customers in substantially the same manner as did TomorrowNow—which Oracle

6    alleged constituted copyright infringement.  Given the close similarity between CedarCrestone's

7    conduct and that alleged by Oracle against SAP and TomorrowNow, at the time CedarCrestone

8    sent its email to Oracle it knew that Oracle would regard CedarCrestone's conduct as infringing

9    Oracle's copyrights if Oracle knew the truth about how CedarCrestone provided its Maintain

10   Services and proposed to expand them by virtue of its TomorrowNow purchase.

11            73.     For years, CedarCrestone offered its Maintain Services to its customers

12   without ever telling Oracle that it supported Oracle's customers using local copies of Oracle's

13   copyrighted software, that it used a single, generic log-in credential to download updates that it

14   either passed on to customers or modified and distributed to them, that it cross-used generic

15   copies of Oracle's copyrighted software to support multiple customers, or that it used all of this

16   infringing conduct to lure customers into a deeper and more lucrative relationship with

17   CedarCrestone, including for its suspect hosting services.

18   **F.     The Terms Of CedarCrestone's Terminated PartnerNetwork**
19   **        And Distribution Agreements**

20            74.     At all relevant times, CedarCrestone was a member of the OPN through its

21   OPN Agreement with Oracle.  CedarCrestone first entered into an OPN Agreement with Oracle

22   in 2005.  The parties renewed that agreement from time to time, including most recently on or

23   about November 3, 2011.  CedarCrestone and Oracle were also parties to a Full Use Distribution

24   Agreement ("FUDA") beginning at least as of October 2, 2008 (when it was referred to as the

25   Full Use Program Distribution Agreement), and continuing, with periodic renewals, through a

26   FUDA dated April 4, 2012.

27            75.     On September 4, 2012, Oracle terminated CedarCrestone's OPN

28   Agreement and FUDA.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

76.     CedarCrestone's OPN Agreement prohibited misrepresentation of CedarCrestone's relationship with Oracle: "You may not . . . use the Oracle property in a manner that misrepresents your relationship with Oracle or is otherwise misleading or that reflects negatively on Oracle."

77.     CedarCrestone's OPN Agreement and FUDA both explicitly incorporated by reference Oracle's Partner Code of Conduct and Business Ethics ("Ethics Code").  Both agreements also provided for immediate termination by Oracle for any violation of the Ethics Code.  For example:

> You agree to comply with the terms of the Oracle Partner Code of Conduct and Business Ethics, which is available at http://partner.oracle.com (log in, select Membership / Agreements & Policies). . . . You agree that any violation of this section constitutes just cause for the immediate termination by Oracle of this agreement without any liability incurred by Oracle to you.

78.     The Ethics Code prohibits illegal conduct by a Partner:

> This Code is applicable to you as an Oracle Partner, your resellers, and to all personnel employed by or engaged to provide services to you (either "Partner" or "you") throughout the world.  Oracle Corporation and its subsidiaries ("Oracle") require that you comply with all laws and regulations applicable to your business, wherever conducted, and with this Code.

79.     The Ethics Code also prohibits unfair and deceptive business practices:

> Unfair methods of competition and deceptive practices are also prohibited.  Examples of these include making false or misleading statements about your or Oracle's products or services, falsely disparaging an Oracle competitor or its products or services, [or] making product or service claims without facts to substantiate them . . . .

80.     The Ethics Code also prohibits unauthorized copying and use of Oracle's intellectual property: "You must respect the intellectual property of Oracle and not use Oracle's patented technology or reproduce copyrighted software, documentation, or other materials

23

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    without written permission."

2    81.    The Ethics Code also requires that CedarCrestone proactively report to

3    Oracle any conduct that CedarCrestone believes in good faith to be "an actual, apparent, or

4    potential violation" of the Ethics Code.  The Ethics Code further provides that "Oracle maintains

5    an 'open door' policy with regard to your questions, including any questions related to business

6    conduct and ethics."  As stated in the Ethics Code, questions or reports regarding violations of

7    the Ethics Code can be raised through Oracle's legal counsel, through a 24/7 toll-free helpline, or

8    online via a website.

9    **G.    CedarCrestone Made False And Misleading Statements To
10         Prospective Customers**

11    82.    In addition to the admitted, documented, and ongoing unauthorized

12    copying and use of Oracle's intellectual property described above, CedarCrestone *intentionally*

13    *misrepresented* its relationship with Oracle and otherwise deceived prospective customers.

14    These misrepresentations included the OKC Proposal (claiming that its tax and regulatory

15    updates "are developed independently by CedarCrestone" without using Oracle's competing

16    updates "as a starting point."), the TUSD Proposal, and generic marketing flyers that

17    CedarCrestone provided to prospective customers.

18    83.    As another example, CedarCrestone told the City in the OKC Proposal,

19    "As a Platinum Partner of Oracle, our relationship with Oracle is central to our current and future

20    successes.  The City can rest assured that CedarCrestone provides all services in a manner that is

21    free of intellectual property infringement."  CedarCrestone further stated, "As an Oracle

22    Platinum Partner, CedarCrestone will not install any patches or tax updates that the City has not

23    legally downloaded prior to terminating their Oracle support or take other actions that would

24    cause the City or CedarCrestone to violate the terms of the City's PeopleSoft licenses."  In the

25    same document, CedarCrestone claimed in a chart purportedly "differentiating" itself from

26    competitors that its "Oracle Platinum Partnership" offered the "Value to Oklahoma City" of an

27    "Assurance that services are delivered free of intellectual property infringement." (see excerpt

28    below)

4) Clarify what differentiates your company from your competition.

| DIFFERENTIATOR | VALUE TO OKLAHOMA CITY |
|---|---|
| PEOPLESOFT FOCUS | Partner whose core business is PeopleSoft |
| DEPTH & BREADTH OF EXPERIENCE | "Been there, done that" partner to support City applications |
| CEDARCRESTONE SIZE | Unparalleled knowledge base for PeopleSoft support |
| COMPLETE SERVICE OFFERINGS | Lowers risk to City by eliminating the need for multiple vendors |
| ORACLE PLATINUM PARTNERSHIP | Assurance that services are delivered free of intellectual property infringement |
| PARTNERSHIP FOCUS | Enables optimization and enhancement of City's investment |

84.     Each of these statements in the OKC Proposal is false or misleading.  As CedarCrestone knows or should know, CedarCrestone's Oracle partner status did not immunize it against claims for unauthorized copying or use of Oracle software and support materials.  No agreement between Oracle and CedarCrestone authorizes CedarCrestone to make these statements to customers, or provides any basis for CedarCrestone to believe them.  In fact, Oracle gave CedarCrestone no permission at all to engage in the software support activities CedarCrestone pitched in the OKC Proposal.  To the contrary, the Ethics Code incorporated by CedarCrestone's OPN Agreement and FUDA provides that CedarCrestone must "respect the intellectual property of Oracle and not use Oracle's patented technology or reproduce copyrighted software, documentation, or other materials without written permission." CedarCrestone's statements to its customers and prospective customers misrepresented CedarCrestone's relationship with Oracle and deceived or misled customers and prospective customers.  CedarCrestone knew Oracle had economic relations with these customers, with whom Oracle expected to have continuing and advantageous economic relationships with the probability of future economic benefit from support service contracts and software licenses. Absent CedarCrestone's misrepresentations, these customers would have chosen Oracle for those same services.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**First Claim for Relief**

**Copyright Infringement**

**(Claim By OIC)**

85.     OIC incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

86.     The software and support materials that CedarCrestone copied without authorization include numerous works protected by the Federal Copyright Act, 17 U.S.C. § 101 *et seq.* OIC owns a valid and enforceable copyright in, or an exclusive license to, all of its software applications and support materials, which are creative works of original authorship. OIC has pre-existing Certificates of Registration that cover many of the software applications and support materials taken and copied by CedarCrestone.

87.     OIC has also obtained, through transfer agreements, all rights, title, and interest in registered and unregistered copyrights formerly owned by certain PeopleSoft entities.

88.     OIC owned exclusive rights to each of the copyrights at issue in this case at a point in time during which CedarCrestone infringed those exclusive rights.

89.     CedarCrestone has infringed copyrights in Oracle software applications and support materials, including the applications and materials covered by the certificates identified, dated, and numbered as follows:

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| PeopleSoft HRMS 7.0 | December 15, 1998 | TX 4-792-577 |
| PeopleSoft HRMS 7.5 | December 15, 1998 | TX 4-792-575 |
| PeopleSoft 8 HRMS SP1 | March 26, 2001 | TX 5-501-312 |
| PeopleSoft 8.3 HRMS | February 1, 2002 | TX 5-469-032 |
| PeopleSoft 8.8 HRMS | June 11, 2004 | TX 6-093-947 |
| PeopleSoft HRMS 8.8 SP1 | February 10, 2010 | TX 7-065-376 |
| PeopleSoft HRMS 8.9 | February 10, 2010 | TX 7-065-381 |
| PeopleSoft Financials, Distribution & Manufacturing 7.5 | December 15, 1998 | TX 4-792-574 |
| PeopleSoft Financials and Supply Chain Management (FIN/SCM) 8.0 | November 20, 2000 | TX 5-291-439 |
| PeopleSoft Student Administration Solutions 8.0 | February 24, 2010 | TX 7-077-447 |

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

| Title of Work | Date of Registration | Registration Number |
|---|---|---|
| SP1 | | |
| PeopleSoft Campus Solutions 8.9 | February 24, 2010 | TX 7-077-451 |
| PeopleTools 7.5 | November 20, 1998 | TX 4-792-578 |
| PeopleTools 8.10 | September 5, 2000 | TX 5-266-221 |
| PeopleTools 8.44 | March 8, 2010 | TX 7-092-583 |
| PeopleTools 8.45 | March 8, 2010 | TX 7-092-617 |
| PeopleTools 8.46 | March 8, 2010 | TX 7-092-772 |
| PeopleTools 8.47 | March 8, 2010 | TX 7-092-797 |
| PeopleTools 8.48 | March 8, 2010 | TX 7-092-819 |
| PeopleTools 8.50 | March 8, 2010 | TX 7-092-757 |

90.     Through the acts alleged above, CedarCrestone has violated the exclusive rights of OIC to reproduce and to authorize the reproduction of OIC's copyrighted works, including materials covered by the registrations listed above, by copying Oracle's software applications, copying Oracle's updates and support materials, copying infringing materials created by TomorrowNow, and through other acts of reproduction, all in violation of 17 U.S.C. § 106 and without authorization or license.

91.     CedarCrestone has also violated the exclusive rights of OIC to distribute, authorize distribution, create derivative works, and authorize creation of derivative works, of and from OIC's copyrighted works, including materials covered by the registrations listed above, by modifying installations of Oracle software, by creating updates that contain modified Oracle code, by distributing updates to CedarCrestone's customers, and other acts of creation of derivative works and distribution, all in violation of 17 U.S.C. § 106 and without authorization or license.

92.     CedarCrestone was not authorized to reproduce, distribute, or create derivative works from Oracle's copyrighted software and support materials except as authorized by Oracle.

93.     CedarCrestone's copying and distribution of Oracle's copyrighted software and support materials was more than de minimis.

94.     In addition to directly infringing the exclusive rights of OIC, CedarCrestone has contributorily and/or vicariously infringed the exclusive rights of OIC in

27

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

OIC's copyrighted works by controlling, directing, intentionally encouraging, inducing or materially contributing to the copying, distribution, or creation of derivative works from OIC's copyrighted works.  CedarCrestone obtained a direct financial benefit from the above alleged infringing activities while declining to exercise its right to stop it or limit it.

95.     CedarCrestone knew or should have known that reproducing, distributing, and creating derivative works of and from OIC's copyrighted works infringed the exclusive rights of OIC in those materials.  CedarCrestone's infringement was willful, as described above.

96.     OIC is entitled to damages in an amount to be proven at trial, including actual damages and profits attributable to the infringement not taken into account in computing actual damages under 17 U.S.C. § 504(b).  OIC is entitled to statutory damages under 17 U.S.C. § 504(c).

97.     CedarCrestone's infringement of OIC's exclusive rights has caused OIC irreparable injury.  Unless restrained and enjoined, CedarCrestone will continue to commit such acts.  OIC's remedies at law are not adequate to compensate Oracle for these inflicted and threatened injuries, entitling Oracle to remedies including injunctive relief as provided by 17 U.S.C. § 502, and an order impounding or destroying any and all infringing materials pursuant to 17 U.S.C. § 503.

**Second Claim for Relief**

**Breach of Contract**

**(Claim By Oracle America)**

98.     Oracle America incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

99.     CedarCrestone agreed to be bound by the Oracle PartnerNetwork Worldwide Agreement ("OPN Agreement") beginning at least as of February 1, 2005 and most recently as of November 3, 2011.  Beginning at least as of January 19, 2010, the OPN Agreement incorporates by reference Oracle's Partner Code of Conduct and Business Ethics ("Ethics Code") and makes a violation of that Ethics Code grounds for immediate termination of the OPN Agreement.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

100.     CedarCrestone also agreed to be bound by the Full Use Distribution Agreement ("FUDA"), beginning at least as of October 2, 2008 and most recently as of April 4, 2012.  At all relevant times, the operative FUDA incorporates by reference Oracle's Ethics Code and makes a violation of that Ethics Code grounds for immediate termination of the FUDA.

101.     Oracle America has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the OPN Agreement and the FUDA, including the Ethics Code.

102.     CedarCrestone breached the OPN Agreement's provision prohibiting CedarCrestone from misrepresenting its relationship with Oracle by making false and/or misleading statements to prospective customers about CedarCrestone's products and/or services, including without limitation by misrepresenting the nature of CedarCrestone's relationship with Oracle, by misleading prospective customers as to the (non-existent) benefits of that relationship to CedarCrestone related to the legality of CedarCrestone's software support services, and/or by making false statements about the ways CedarCrestone uses Oracle-authored software and support materials to provide its services, as described above.

103.     CedarCrestone breached the OPN Agreement and the FUDA by violating the term of the Ethics Code requiring CedarCrestone to comply with all laws and regulations applicable to its business.

104.     CedarCrestone also breached the OPN Agreement and the FUDA by violating the term of the Ethics Code prohibiting unfair methods of competition and deceptive practices.  CedarCrestone breached these provisions by making false and/or misleading statements to prospective customers about CedarCrestone's products and/or services, including without limitation by misrepresenting the nature of CedarCrestone's relationship with Oracle, by misleading prospective customers as to the (non-existent) benefits of that relationship to CedarCrestone related to the legality of CedarCrestone's software support services, and/or by making false statements about the ways CedarCrestone uses Oracle-authored software and support materials to provide its services, as described above.  CedarCrestone also breached the same provisions by reproducing, distributing, using, and/or creating unlicensed works derived

29

1    from Oracle software and support materials, without authorization or license, as described above.

2         105.   CedarCrestone breached the OPN Agreement and the FUDA by violating

3    the term of the Ethics Code requiring CedarCrestone to respect Oracle's intellectual property.  It

4    did so by reproducing Oracle's copyrighted software and support materials without permission,

5    as described above.

6         106.   As a result of CedarCrestone's breach of the OPN Agreement and the

7    FUDA, including the Ethics Code, CedarCrestone has caused damage to Oracle America in an

8    amount to be proven at trial.

9                          **Third Claim for Relief**

10                           **Breach of Contract**

11                          **(Claim By Oracle America)**

12        107.   Oracle America incorporates by reference each of the allegations in

13   paragraphs 1-31, 47-50, 65-84, and 98-106 of this Complaint as though fully set forth here.

14        108.   CedarCrestone agreed to be bound by the licenses and Terms of Use on

15   Oracle's customer support websites when CedarCrestone accessed or downloaded software and

16   support materials from Oracle's customer support websites.

17        109.   Oracle America has performed all conditions, covenants, and promises

18   required on its part to be performed in accordance with the terms and conditions of Oracle's

19   customer support websites' Terms of Use.

20        110.   CedarCrestone has breached Oracle's customer support websites' Terms

21   of Use by, among other things:

22   •    Accessing software and support materials not expressly licensed by and/or paid

23        for by CedarCrestone or the customers in whose name CedarCrestone accessed

24        Oracle's customer support websites and took the software and support materials;

25   •    Accessing the content available through Oracle's customer support websites, in

26        the form of the software and support materials, without being an authorized and

27        designated Oracle technical support contact;

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

- Using the software and support materials other than in support of a customer's authorized use of Oracle software for which a customer holds a supported license from Oracle;

- Using the software and support materials without a legitimate business purpose;

- Using the software and support materials in ways other than the furtherance of a relationship with Oracle; and

- Accessing or using software and support materials other than for personal, informational or non-commercial purposes.

111.    As a result of CedarCrestone's breach of Oracle's customer support websites' Terms of Use, Defendants have caused damage to Oracle America in an amount to be proven at trial.

## Fourth Claim for Relief

### Unfair Competition – Cal. Bus. & Prof. Code § 17200 *et seq.*

### (Claim By Oracle America)

112.    Oracle America incorporates by reference each of the allegations in paragraphs 1-84 and 98-111 of this Complaint as though fully set forth here.

113.    CedarCrestone has engaged in unlawful, unfair, and/or fraudulent business acts or practices, including by: (a) intentionally making false and/or misleading statements to prospective customers about CedarCrestone's products and/or services, including without limitation by misrepresenting the nature of CedarCrestone's relationship with Oracle; (b) misleading prospective customers as to non-existent consequences of CedarCrestone's partnership status with respect to the legality of CedarCrestone's services; (c) making false statements about the ways CedarCrestone uses Oracle-authored software and support materials to provide its services, as described above; (d) engaging in unfair and/or fraudulent conduct that breached CedarCrestone's OPN Agreement and FUDA, as described above; (e) intentionally interfering with Oracle's prospective economic advantage; and/or, (f) falsely misrepresenting to Oracle that CedarCrestone proactively disclosed and cured potential and actual infringement of Oracle's intellectual property while, in fact, CedarCrestone engaged in widespread practices that

31

1   infringed Oracle's copyrights.

2        114.    CedarCrestone committed these unlawful, unfair, and/or fraudulent

3   business acts or practices in an effort to gain unfair competitive advantage over Oracle in

4   competing for the provision of support services to licensees of Oracle's PeopleSoft software.

5        115.    These unlawful, unfair, and/or fraudulent business acts or practices offend

6   public policies against false or misleading statements to potential consumers regarding

7   commercial products and services, and they are immoral, unethical, oppressive, and/or

8   unscrupulous, including because they intentionally seek to deceive potential customers about the

9   value, risks, and legality of CedarCrestone's offerings.  Additionally, CedarCrestone expressly

10   agreed—in the OPN Agreement and FUDA—to comply with the Ethics Code, which defines

11   unfair methods of competition and deceptive practices to include the CedarCrestone conduct that

12   Oracle alleges in this cause of action.

13        116.    These unlawful, unfair, and/or fraudulent business acts or practices inflict

14   substantial injury on consumers of CedarCrestone's services, including without limitation by

15   deceiving them into (a) making a misinformed choice to purchase support services from

16   CedarCrestone; (b) overestimating the value of such services that actually are not backed by any

17   of the assurances that CedarCrestone fabricates to extract additional consideration; and, (c)

18   taking on unknown and undue risk because of CedarCrestone's false statements about the

19   legality of its services and its use of Oracle's intellectual property.  These unlawful, unfair,

20   and/or fraudulent business acts or practices offer no benefits to consumers or competition that

21   outweigh these injuries, which cannot reasonably be avoided in part because of CedarCrestone's

22   knowing deception and misrepresentation with respect to material information.

23        117.    CedarCrestone's acts and conduct constitute unfair competition as defined

24   by California Business & Professions Code § 17200 *et seq.*

25        118.    As described above, Oracle America has suffered injury in fact and lost

26   money or property as a result of CedarCrestone's unfair competition, including without

27   limitation loss of revenue from customers who instead would have chosen to purchase support

28   services from Oracle America.  CedarCrestone's unfair competition also breached

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

CedarCrestone's OPN Agreement and FUDA with Oracle America, and the Ethics Code, as described above. The OPN Agreement and FUDA identify Oracle's location as Redwood City, California and Redwood Shores, California, respectively.

119. Oracle America has also suffered irreparable injury as a result of CedarCrestone's unfair competition and, unless CedarCrestone is enjoined from further such unfair competition, will continue to suffer irreparable injury, such that Oracle America has no adequate remedy at law.

120. CedarCrestone should be compelled to disgorge and/or restore any and all revenues, earnings, profits, compensation, and benefits it may have obtained in violation of California Business & Professions Code § 17200 *et seq.*, including, but not limited to, returning any revenue earned from the unlawful and unfair use of Oracle's stolen property, and should be enjoined from further unlawful and/or unfair business practices.

## Fifth Claim for Relief

### Intentional Interference With Prospective Economic Advantage

### (Claim By Oracle America and OIC)

121. Oracle America and OIC incorporate by reference each of the allegations in paragraphs 1-84 and 98-120 of this Complaint as though fully set forth here.

122. Oracle America and OIC have and had an expectancy in continuing and advantageous economic relationships with current and prospective purchasers and licensees of Oracle's support services and software, which are conducted through Oracle America.

123. These relationships contained the probability of future economic benefit in the form of profitable support service contracts and software licenses. Had CedarCrestone refrained from engaging in the unlawful and wrongful conduct as referenced in paragraph 121, above, there is a substantial probability that support customers of Oracle America would have initiated, renewed, or expanded their support contracts and software licenses with Oracle America, rather than with CedarCrestone.

124. CedarCrestone was aware of these economic relationships and intended to interfere with and disrupt them by wrongfully:

33

- gaining unauthorized access to the software and support materials available on Oracle America's computer systems through Oracle's customer support websites, in violation of the agreements governing such access, by misrepresenting to Oracle the nature of the services that CedarCrestone provided to its customers, the methods by which CedarCrestone provided services to its customers, and the extent of CedarCrestone's compliance, or lack thereof, with CedarCrestone's obligations to report any actual or potential copyright infringement to Oracle;

- luring Oracle America's and OIC's current and prospective customers by making false promotional and marketing statements regarding CedarCrestone's ability to provide support services for Oracle software that was free from copyright infringement due to CedarCrestone's status as an Oracle partner; and

- using information learned through the improper access to Oracle America's computer systems through Oracle's customer support websites to provide support services to CedarCrestone's customers;

125.   CedarCrestone's conduct was wrongful by a measure beyond the fact of the interference itself.  CedarCrestone gained unauthorized access to Oracle America's computer systems through Oracle America's password-protected customer support websites, breached the agreements governing access to Oracle's customer support websites, falsely advertised CedarCrestone's services and the impact of its relationship with Oracle, and misrepresented its business practices in order to maintain that same relationship, all in an effort to obtain and retain the current and prospective clients of Oracle America and OIC.

126.   This conduct, as alleged above, also constitutes an unfair business practice, in violation of California Business & Professions Code § 17200 *et seq*.

127.   As a result of CedarCrestone's acts, the above-described relationships have been actually disrupted, causing certain current and prospective support customers to contract with CedarCrestone instead of with Oracle America and OIC for those customers' software support and maintenance and, in some cases, for their enterprise software.

128.   As a direct and proximate result of CedarCrestone's actions, Oracle

34

1    America and OIC have suffered economic harm, including, but not limited to, loss of profits

2    from sales of support services and software licenses to current and potential customers.

3    CedarCrestone's wrongful conduct was a substantial factor in causing this harm.

4            129.    Unless CedarCrestone is restrained by appropriate injunctive relief,

5    CedarCrestone's actions are likely to recur and will cause Oracle America and OIC irreparable

6    injury for which there is no adequate remedy at law.

7            130.    CedarCrestone's interference with Oracle America's and OIC's

8    prospective economic advantage with its current and future customers, as described above, was

9    willful, malicious, oppressive, and in conscious disregard of Oracle America's and OIC's rights,

10   and Oracle America and OIC are therefore entitled to an award of punitive damages to punish

11   CedarCrestone's wrongful conduct and deter future wrongful conduct.

12                          **Prayer for Relief**

13           WHEREFORE, Oracle respectfully prays for the following:

14           A.      For a preliminary and permanent injunction restraining CedarCrestone, its

15   officers, agents, servants, employees, attorneys, and those in active concert or participation with

16   it, from the following:

17                   (1)     Reproducing, distributing, or creating derivative works from

18   Oracle's software or support materials in any way, including for any business purpose, except as

19   allowed by express license from Oracle;

20                   (2)     Facilitating, contributing to, or inducing the reproduction of,

21   distribution of, or creation of derivative works from any Oracle software or support materials by,

22   for, or on behalf of, any customer or party, except as allowed by express license by Oracle;

23                   (3)     Certifying, promoting, advertising, or representing that it is an

24   Oracle Partner or that Oracle has in any way endorsed or approved its support services; and

25                   (4)     Otherwise engaging in acts of unfair competition, unfair practices,

26   or copyright infringement against Oracle;

27           B.      For an Order directing CedarCrestone to file with the Court and serve on

28   Oracle, within 30 days after the service on CedarCrestone of such injunction, a report in writing,

under oath, setting forth in detail the manner and form in which CedarCrestone has complied

with the injunction;

        C.      For an Order directing CedarCrestone to return Oracle's property,

including, without limitation, Oracle's confidential, proprietary, and copyrighted software and

support materials that CedarCrestone copied or used without authorization, as set forth in this

Complaint;

        D.      For an Order impounding or destroying all infringing materials pursuant to

17 U.S.C. § 503;

        E.      For restitution and disgorgement of all ill-gotten gains unjustly obtained

and retained by CedarCrestone through the acts complained of in this Complaint;

        F.      For damages against CedarCrestone to be proven at trial;

        G.      For statutory damages against CedarCrestone pursuant to 17 U.S.C. § 504;

        H.      For an Order awarding Oracle punitive damages in a sum to be determined

at trial;

        I.      For prejudgment interest;

        J.      For an accounting;

        K.      For an Order awarding Oracle its attorneys' fees and costs; and,

        L.      For an Order awarding Oracle such other and further relief as the Court

deems just and proper.


DATED:  February 1, 2013

                    Bingham McCutchen LLP


                    By:          /s/ Geoffrey M. Howard
                              Geoffrey M. Howard
                              Attorneys for Plaintiffs
            Oracle America, Inc., and Oracle International Corp.

1

## DEMAND FOR JURY TRIAL

2

      In accordance with Fed. R. Civ. P. 38(b), Plaintiffs Oracle America, Inc. and

3

Oracle International Corp. demand a trial by jury on all issues triable by a jury.

4

5

DATED:  February 1, 2013

6

                        Bingham McCutchen LLP

7

8

                    By:          /s/ Geoffrey M. Howard

9

                          Geoffrey M. Howard
                          Attorneys for Plaintiffs

10

          Oracle America, Inc. and Oracle International Corp.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF