1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

ORACLE AMERICA, INC., a Delaware corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,

               Plaintiffs,

     v.

CEDARCRESTONE, INC., a Delaware corporation,

               Defendant.

Case No. 12-cv-04626 NC

**ORDER DENYING CEDARCRESTONE'S MOTION TO DISMISS ORACLE'S FIFTH CLAIM FOR RELIEF**

Re: Dkt. No. 48

    Before the Court is CedarCrestone's motion to dismiss Oracle's fifth cause of action for intentional interference with prospective economic advantage. CedarCrestone contends that Oracle has failed to state a plausible interference claim because (1) the complaint does not identify any specific economic relationship with any customer that has been actually disrupted; and (2) there are no allegations establishing a causal connection between any purported lost opportunity and an allegedly wrongful act by CedarCrestone. Because the Court finds that Oracle's allegations give rise to an inference of a reasonable probability of future economic benefit from the existing business relationship with its software licensees and support customers, as well as economic harm proximately caused by CedarCrestone, the Court DENIES the motion.

//

# I. BACKGROUND

This lawsuit arises out of a dispute regarding CedarCrestone's conduct in providing support services for Oracle's PeopleSoft-branded software.  Oracle brings this action for copyright infringement, breach of contract, unfair competition, and intentional interference with prospective economic advantage, asserting that CedarCrestone misappropriated Oracle's intellectual property.  *See* Dkt. No. 36.  At issue here is Oracle's cause of action for intentional interference with prospective economic advantage.

In analyzing claims under Federal Rule of Civil Procedure 12(b)(6), the Court assumes that all material facts alleged in the complaint are true.  *Coal. For ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2010).  The first amended complaint here alleges that Oracle develops, owns, and licenses intellectual property, including intellectual property rights formerly held by certain PeopleSoft entities.  Dkt. No. 36 ¶¶ 9-10.  Oracle's customers purchase licenses that grant them limited rights to use specific Oracle software programs, with Oracle retaining all copyright and other intellectual property rights in these works.  *Id.* ¶ 20.  In addition to the software licenses, Oracle's customers typically purchase support services from Oracle, including bug fixes, patches, and tax and regulatory updates to the software programs, designed to ensure that customers can run payroll processes, generate year-end tax forms, and administer financial aid in compliance with evolving laws and regulations.  *Id.* ¶¶ 20-23.  Until recently, CedarCrestone competed with Oracle by providing tax and regulatory support services for certain of Oracle's PeopleSoft family of applications to customers who would typically pay Oracle for support services related to their licensed Oracle software.  *Id.* ¶¶ 7, 23.

Until Oracle terminated the partnership in September 2012, CedarCrestone was a member of the Oracle PartnerNetwork.  *Id.* ¶¶ 1, 11, 74-75.  The complaint asserts that CedarCrestone used its partnership status to both misappropriate Oracle's intellectual property, by selling infringing software updates for Oracle's software, and to attract customers to whom it could provide services using the misappropriated software, thus interfering with Oracle's customer relationships.  *Id.* ¶¶ 1-3, 7-8.  Specifically, Oracle

1   alleges that CedarCrestone used unauthorized reproductions of Oracle's PeopleSoft

2   software to generate updates for that software and then re-sold those updates at steep

3   discounts to unsuspecting customers who thought they were getting proper support

4   authorized by Oracle through an Oracle partner. *Id.* ¶ 2.  Oracle also alleges that

5   CedarCrestone misrepresented its relationship with Oracle and otherwise deceived

6   prospective customers by, among other things, stating that CedarCrestone's "Oracle

7   Platinum Partnership" provided an "[a]ssurance that services are delivered free of

8   intellectual property infringement," "differentiating" CedarCrestone from its competitors.

9   *Id.* ¶¶ 82-83.  Oracle alleges that CedarCrestone was aware of Oracle's economic

10  relationships with current and prospective purchasers and licensees of Oracle's support

11  services and software, and intended to interfere with them by wrongfully:

12  
13  - gaining unauthorized access to the software and support materials available
       on Oracle America's computer systems through Oracle's customer support
14     websites, in violation of the agreements governing such access, by
       misrepresenting to Oracle the nature of the services that CedarCrestone
       provided to its customers, the methods by which CedarCrestone provided
15     services to its customers, and the extent of CedarCrestone's compliance, or
       lack thereof, with CedarCrestone's obligations to report any actual or
16     potential copyright infringement to Oracle;

17  - luring Oracle America's and OIC [Oracle International Corporation]'s
       current and prospective customers by making false promotional and
18     marketing statements regarding CedarCrestone's ability to provide support
       services for Oracle software that was free from copyright infringement due
19     to CedarCrestone's status as an Oracle partner; and

20  - using information learned through the improper access to Oracle America's
       computer systems through Oracle's customer support websites to provide
21     support services to CedarCrestone's customers.

22  *Id.* ¶ 124.

23        The complaint further asserts that CedarCrestone acted in an effort to obtain and

24  retain the current and prospective clients of Oracle and that CedarCrestone's acts have

25  caused certain Oracle customers to contract with CedarCrestone instead of with Oracle for

26  those customers' software support and maintenance and, in some cases, for their enterprise

27  software. *Id.* ¶¶ 24, 125, 127.  Some of Oracle's licensees had originally gone to another

28  third party support services provider, TomorrowNow. *Id.* ¶¶ 5, 63.  CedarCrestone targeted

and obtained those licensees as support customers despite being aware of Oracle's well-publicized allegations of copyright infringement against TomorrowNow. *Id.* The complaint alleges that, absent CedarCrestone's unlawful conduct, there is a substantial probability that Oracle customers would have initiated, renewed, or expanded their support contracts and software licenses with Oracle, rather than with CedarCrestone. *Id.* ¶¶ 84, 123. Oracle asserts that it has suffered economic harm, including the loss of profits from sales of support services and software licenses to current and potential customers. *Id.* ¶ 128.

CedarCrestone moves to dismiss Oracle's claim for intentional interference with prospective economic advantage pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the claim fails to identify any particular lost business opportunity or facts supporting the conclusion that CedarCrestone interfered with any such opportunity. Dkt. Nos. 48, 56. The Court finds the motion suitable for disposition without a hearing under Civil Local Rule 7-1(b). Both parties consented to the jurisdiction of a United States Magistrate Judge under 28 U.S.C. § 636(c). Dkt. Nos. 16, 17.

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556–57) (internal quotation marks omitted). A court is not required to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Additionally, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

1

# III. DISCUSSION

2      Under California law, the elements of the tort of intentional interference with

3 prospective economic advantage are:

4        (1) an economic relationship between the plaintiff and some third party,
         with the probability of future economic benefit to the plaintiff; (2) the
5        defendant's knowledge of the relationship; (3) intentional [wrongful] acts
         on the part of the defendant designed to disrupt the relationship; (4) actual
6        disruption of the relationship; and (5) economic harm to the plaintiff
         proximately caused by the acts of the defendant.
7

8 *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) (quoting

9 *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)).

10      This tort protects the expectancy that arises from an *existing* business relationship.

11 *See Roth v. Rhodes*, 25 Cal. App. 4th 530, 546 (1994). Without an existing relationship

12 with an identifiable buyer, the expectation of a future sale is "at most a hope for an

13 economic relationship and a desire for future benefit." *Westside Ctr. Associates v. Safeway*

14 *Stores 23, Inc.*, 42 Cal. App. 4th 507, 527 (1996) (quoting *Blank v. Kirwan*, 39 Cal. 3d 311,

15 331 (1985)). While "the chance the expectancy otherwise would have occurred is

16 necessarily a matter of some uncertainty . . . [t]he law precludes recovery for overly

17 speculative expectancies by initially requiring proof the business relationship contained *the*

18 *probability* of future economic benefit to the plaintiff." *Westside*, 42 Cal. App. 4th at 522

19 (internal quotation marks and citations omitted). "Although varying language has been

20 used to express this threshold requirement, the cases generally agree it must be reasonably

21 probable that the prospective economic advantage would have been realized but for

22 defendant's interference." *Id.* (quoting *Youst v. Longo*, 43 Cal. 3d 64, 71 (1987)).

23      While CedarCrestone asserts that Oracle fails to satisfy any of the five elements of the

24 claim, the motion to dismiss relies on two primary arguments: (1) that the complaint does

25 not identify any specific economic relationship that Oracle has actually lost; and (2) that

26 there are no allegations establishing a causal connection between a purported lost

27 opportunity and an allegedly wrongful act by CedarCrestone. Dkt. No. 48 at 3, 5, 7.

28 Neither of these arguments is persuasive to defeat Oracle's claim at the pleadings stage.

1

**A.    Oracle Has Pled the Requisite Economic Relationship.**

2       CedarCrestone argues that Oracle merely alleges interference "with the broader

3   market for Oracle's products and services," and that "such hazy market-based allegations,

4   unconnected to any particular business relationship, do not state a viable interference

5   claim." Dkt. No. 48 at 3. CedarCrestone's attempt to portray Oracle's claim as based on a

6   generalized, non-actionable, "market interference" theory is unavailing. *Id.* at 3, 7-8. The

7   complaint alleges that CedarCrestone targeted and took licensees of Oracle's PeopleSoft-

8   branded software and Oracle support customers. These were actual customers with whom

9   Oracle had an existing economic relationship as Oracle software licensees. *See, e.g.,* Dkt.

10  No. 36 ¶¶ 20-23, 122-24. Oracle alleges that, absent CedarCrestone's unlawful conduct,

11  there is a substantial probability that Oracle support customers would have initiated,

12  renewed, or expanded their support contracts and software licenses with Oracle, rather than

13  with CedarCrestone. *Id.* ¶¶ 84, 123.

14      These allegations, construed in the light most favorable to Oracle, *see VeriSign, Inc.*,

15  611 F.3d at 501, adequately plead the requisite economic relationship between Oracle and

16  some third party with the probability of future economic benefit, namely, the specific group

17  of Oracle software licensees and support customers that became CedarCrestone's

18  customers. By definition, this is a limited group of customers whose identities should be in

19  CedarCrestone's possession, or could be obtained through discovery. CedarCrestone's

20  assertion that it has no way of defending against Oracle's intentional interference claim

21  because Oracle has not pled the elements of the claim specifically as to each customer has

22  no merit. Dkt. No. 48 at 5-7, 10. *See Humboldt Wholesale, Inc. v. Humboldt Nation*

23  *Distribution, LLC*, No. 11-cv-4144 EMC, 2012 WL 2572065, at *6 (N.D. Cal. July 2, 2012)

24  (allegations that manufacturer and seller of hydroponic goods had existing and prospective

25  business relationships with third-party distributors and retailers, that competitor knew or

26  should have known of those relationships, and that competitor disrupted those relationships

27  by registering domain names and diverting Internet traffic from plaintiff to competitor

28  through those names, stated a claim for intentional interference); *PhoneDog v. Kravitz*, No.

Case No. 12-cv-04626 NC
ORDER DENYING MOTION TO                    6
DISMISS FIFTH CLAIM FOR RELIEF

11-cv-03474 MEJ, 2012 WL 273323, at *1 (N.D. Cal. Jan. 30, 2012) (interference claim was sufficiently based on alleged relationship between PhoneDog and its current and prospective advertisers which was disrupted by defendant, causing plaintiff the loss of advertising revenue).

CedarCrestone relies heavily on the holding in *Westside* that the tort of intentional interference with prospective economic advantage does not protect an "economic relationship with the entire market of all possible but as yet unidentified" customers. *Westside*, 42 Cal. App. 4th at 527. The *Westside* court reasoned that this "interference with the market" theory improperly assumed "what normally must be proved, i.e., that it is reasonably probable the plaintiff would have received the expected benefit had it not been for the defendant's interference." *Id.* at 523. In this case, however, Oracle alleges existing and identifiable economic relationships, and does not seek to recover for the loss of hypothetical customers, or the "entire market of all possible but as yet unidentified" customers for a particular product or service. *Cf. Westside*, 42 Cal. App. 4th at 523-27 (shopping center owner could not state an interference claim against national supermarket for closing its anchor supermarket in the center, where plaintiff claimed that defendant interfered not with a particular sale, but with plaintiff's "opportunity" to sell the property for its true value); *Universal Grading Serv. v. eBay, Inc.*, No. 09-cv-2755 RMW, 2011 WL 846060, at *11 (N.D. Cal. Mar. 8, 2011) (alleged interference with "prospective economic relationships with consumers interested in purchasing certified coins in the relevant market" and "reasonable probability of obtaining future economic benefit from selling certified coins to the public at large" did not show the existence of any specific economic relationships with identifiable third parties).

Moreover, the complaint in this case alleges that the software license purchase creates a continuing economic relationship between Oracle and its licensees. Oracle asserts that it owns all intellectual property rights in the PeopleSoft software programs and that the licenses it sells grant customers limited rights. Dkt. No. 36 ¶ 20. The enterprise software systems developed and distributed by Oracle are designed to help its customers manage and

1   grow their business operations. *Id.* ¶ 19.  Because of the importance of keeping the licensed

2   applications updated and in compliance with applicable laws and regulations, Oracle

3   expects that its licensees will continue purchasing support services from Oracle, which they

4   typically do, as alleged in the complaint. *Id.* ¶¶ 20-23, 84, 122.  While CedarCrestone's

5   speculation that Oracle's licensees could have contracted with another support provider

6   might also be possible, Dkt. No. 56 at 2, the Court construes the allegations in the light most

7   favorable to Oracle.  The Court finds that Oracle's allegations give rise to an inference of a

8   reasonable probability of future economic benefit from the existing business relationship

9   with its software licensees and support customers, and not a mere hope or speculation of

10   such a benefit.

11       These allegations distinguish the present case from those cited by CedarCrestone for

12   the proposition that the mere sale of a product or service to a customer is not sufficient to

13   show an economic relationship with the probability of future economic benefit.  Dkt. No. 56

14   at 2, 4-5, 7.  In *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1141 (9th Cir.

15   2008), for example, the plaintiff was a producer of karaoke records who sold those records

16   to a group of distributors and retailers for resale to the public.  Plaintiff sued its competitors

17   alleging that they disrupted its business relationships with customers by misrepresenting to

18   the customers that plaintiff did not have valid licenses for its songs. *Id.* at 1151.  The court

19   held that there were no facts showing an actual disruption of customer relationships. *Id.*

20   Similarly, in *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, 790 F. Supp. 2d 1024,

21   1031-32 (N.D. Cal. 2011), the court held that a creator and seller of virtual horses failed to

22   allege a plausible claim for interference with prospective economic advantage against a

23   competitor selling virtual bunnies.  The court found that plaintiff's allegation that

24   defendant's false claim of copyright infringement caused unidentified customers to

25   purchase alternative products to plaintiff's virtual horse product line was conclusory and

26   insufficient to state an interference claim. *Id.*  Neither *Sybersound* nor *Amaretto* contained

27   any factual allegations of existing, identifiable customer relationships such as those alleged

28   by Oracle here.

1  CedarCrestone's motion also relies on the case *Google Inc. v. American Blind &*

2  *Wallpaper Factory, Inc.*, No. 03-cv-05340 JF, 2005 WL 832398 (N.D. Cal. Mar. 30, 2005)

3  which is designated "not for citation" and cannot be cited to this Court.  *See* Civ. L.R. 3-

4  4(e).  Even if it were citable, *American Blind* would not support CedarCrestone's position

5  because it involved a claim by a retailer of custom window treatments and wall coverings

6  alleging that Google's keyword-triggered advertising program diverted unidentified

7  consumers who wished to find American Blind's products and services to the web sites of

8  plaintiff's competitors.  2005 WL 832398, at *2-3.  The court there held that the claim was

9  based on "merely a 'hope . . . and a desire' for unspecified future sales to unspecified

10  returning customers."  *Id.* at *9.  The cases cited by CedarCrestone thus do not control the

11  outcome in this case.  *See Iqbal*, 556 U.S. at 679 (determining whether a complaint states a

12  plausible claim for relief is "a context-specific task that requires the reviewing court to draw

13  on its judicial experience and common sense" (citation omitted)).

14  Additionally, the complaint here identifies several Oracle licensees to whom

15  CedarCrestone has offered support services based on acts that allegedly infringed Oracle's

16  copyrights.  Dkt. No. 36 ¶¶ 37, 40, 50, 53, 57, 59, 63, 68-69, 82-84 (referring to Nike,

17  Advanced Group, Hewitt (Rogers), PMI, George Weston Bakeries, Hitchiner

18  Manufacturing, Oklahoma City, and Tucson Unified School District).  In response,

19  CedarCrestone asserts that none of these customers is referenced in the interference claim

20  itself, but instead, in "unrelated allegations regarding supposed copyright infringement."

21  However, the copyright infringement allegations are expressly incorporated by reference in

22  the intentional interference claim, *id.* ¶¶ 121, 123, and are alleged to be part of the unlawful

23  and wrongful conduct that caused Oracle licensees and support customers to contract for

24  support services with CedarCrestone, instead of with Oracle, *see id.* ¶¶ 1-4, 7-8.  Oracle has

25  sufficiently alleged a business relationship containing the probability of future economic

26  benefit.  *See Juarez v. Jani-King of California, Inc.*, No. 09-cv-3495 SC, 2010 WL

27  4807086, at *2 (N.D. Cal. Nov. 19, 2010) (provider of cleaning and janitorial services

28  stated an intentional interference claim against franchisees where it identified former

Case No. 12-cv-04626 NC
ORDER DENYING MOTION TO                    9
DISMISS FIFTH CLAIM FOR RELIEF

customers who terminated their relationships with plaintiff and hired an independent cleaning company established by the franchisees); *Silicon Labs Integration, Inc. v. Melman*, No. 08-cv-04030 RMW, 2010 WL 890140, at *2 (N.D. Cal. Mar. 8, 2010) (complaint adequately pled an existing economic relationship by making specific references to potential customers with whom plaintiff had previous sales relationships and engaged in sales negotiations).

**B.     Oracle Has Pled Proximate Causation.**

Contrary to CedarCrestone's contention, the complaint also adequately alleges that Oracle suffered economic harm proximately caused by CedarCrestone. The complaint asserts that CedarCrestone used unauthorized reproductions of Oracle's PeopleSoft software to generate updates for that software and then re-sold those updates at steep discounts to Oracle licensees who thought they were getting proper support authorized by Oracle through an Oracle partner, free of intellectual property infringement. Dkt. No. 36 ¶¶ 2-3, 82-83. Additionally, CedarCrestone targeted and obtained former TomorrowNow support customers despite being aware of Oracle's well-publicized allegations of copyright infringement against TomorrowNow. *Id.* ¶¶ 5, 63. As a result of CedarCrestone's acts, certain Oracle licensees contracted with CedarCrestone, instead of with Oracle, for those customers' software support and maintenance and, in some cases, for their enterprise software, causing Oracle to suffer lost profits from sales of support services and software licenses. *Id.* ¶¶ 24, 125, 127-28. The present case is thus distinguishable from the cases cited by CedarCrestone, which rejected claims for intentional interference with prospective economic advantage because of the failure of plaintiff to allege that it lost a contract or that a negotiation with a customer failed. *See Sybersound*, 517 F.3d at 1151 (alleging merely that ongoing business and economic relationships with customers have been disrupted); *Amaretto*, 790 F. Supp. 2d at 1031-32 (alleging generally that plaintiff's expectancy of additional sales was disrupted because the alleged interference caused unidentified customers to purchase alternative products). The Court finds that, at the pleading stage, Oracle's allegations give rise to a plausible claim for intentional interference.

Case No. 12-cv-04626 NC
ORDER DENYING MOTION TO                         10
DISMISS FIFTH CLAIM FOR RELIEF

CedarCrestone further seeks to undermine the plausibility of Oracle's claim by asserting that (1) the customers CedarCrestone obtained from TomorrowNow chose to leave Oracle support before CedarCrestone came onto the scene; (2) CedarCrestone provided Oracle licensees with specifically tailored support services that Oracle did not offer; and that (3) many of CedarCrestone's clients continued to pay Oracle for support.  Dkt. No. 56 at 2-3.  At most, these arguments raise additional, conflicting inferences which would be better addressed at the summary judgment or trial stage.  *See Silicon Labs Integration*, 2010 WL 890140, at *2 (plaintiff adequately alleged damages as a result of lost sales proximately caused by defendant's interference despite argument that it was just as plausible that the lost sales were due to plaintiff's defective products); *Impeva Labs, Inc. v. Sys. Planning Corp.*, No. 12-cv-00125 EJD, 2012 WL 3647716, at *6 (N.D. Cal. Aug. 23, 2012) (plaintiff's allegation that a third party did not award the contract to plaintiff because of defendants' unlawful allegations of patent infringement provided a sufficient basis to infer causation, despite argument that plaintiff's incipient insolvency was a far more plausible reason for its unsuccessful bid).  To defeat a motion to dismiss, plaintiff must "identify at least one specific, ongoing business relationship that was disrupted," which Oracle has done here. *See DocMagic, Inc. v. Ellie Mae, Inc.*, 745 F. Supp. 2d 1119, 1154 (N.D. Cal. 2010).

## IV. CONCLUSION

Because the Court finds that Oracle has alleged a plausible claim for intentional interference with prospective economic advantage, the Court DENIES CedarCrestone's motion to dismiss Oracle's fifth cause of action.  CedarCrestone's pleading in response to Oracle's first amended complaint is due within 14 days of the date of this order.

IT IS SO ORDERED.

Date: June 26, 2013

Nathanael M. Cousins
United States Magistrate Judge