KEKER & VAN NEST LLP
ROBERT A. VAN NEST - #84065
rvannest@kvn.com
CHRISTA M. ANDERSON - # 184325
canderson@kvn.com
DANIEL PURCELL - # 191424
dpurcell@kvn.com
633 Battery Street
San Francisco, CA  94111-1809
Telephone:     415 391 5400
Facsimile:      415 397 7188

Attorneys for Defendant
CEDARCRESTONE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ORACLE AMERICA, INC., a Delaware corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>              Plaintiffs,<br><br>       v.<br><br>CEDARCRESTONE, INC., a Delaware corporation,<br><br>              Defendant. | Case No. 3:12-cv-04626 (NC)<br><br>**CEDARCRESTONE, INC.'S ANSWER TO ORACLE'S FIRST AMENDED COMPLAINT** |
| CEDARCRESTONE, INC., a Delaware corporation,<br><br>              Counter-claimant,<br><br>       v.<br><br>ORACLE AMERICA, INC., a Delaware corporation, and ORACLE INTERNATIONAL CORPORATION, a California corporation,<br><br>              Counter-defendants. | |

768154.01

Defendant CedarCrestone, Inc. ("CedarCrestone") hereby responds to the Complaint filed by Plaintiffs Oracle America, Inc. ("Oracle America") and Oracle International Corporation ("OIC", together "Oracle") as follows:

## I.    INTRODUCTION

1.    CedarCrestone admits that, prior to Oracle's pretextual termination of its contracts with CedarCrestone, it had been an Oracle Platinum Partner that provided services to Oracle licensees on its own and in conjunction with Oracle.  CedarCrestone was also an Oracle licensee itself.  CedarCrestone's services to Oracle licensees included consulting and advisory services related to PeopleSoft and Oracle E-Business Suites ("EBS") applications, hosting and management of PeopleSoft and EBS applications, and services related to tax and regulatory support for Oracle's PeopleSoft licensees who are using versions of PeopleSoft applications for which Oracle generally no longer provides tax and regulatory updates or who no longer have a maintenance or support contract with Oracle that includes tax or regulatory updates. CedarCrestone denies that it engaged in any "misappropriation" of any Oracle intellectual property, any unfair competition against Oracle, or any wrongdoing of any kind.  With respect to the remaining allegations in paragraph 1, CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny those allegations, and on that basis denies those allegations.

2.    CedarCrestone denies that it engaged in any "infringement" of Oracle intellectual property or that it created any "unauthorized reproductions" of Oracle's PeopleSoft software. CedarCrestone states that it maintained PeopleSoft software "environments" on its computer systems, both as an Oracle PeopleSoft licensee and as an authorized agent and third-party support provider of other Oracle PeopleSoft licensees.  With respect to the remaining allegations in paragraph 2, CedarCrestone denies these allegations.

3.    CedarCrestone denies that it engaged in any "infringement" of Oracle software. CedarCrestone admits that it has downloaded Oracle support materials, including tax updates, from Oracle's website, which are freely available to Oracle licensees, as it was (i) licensed or otherwise permitted to do by Oracle; (ii) permitted to do under the client's license with Oracle;

768154.01

and/or (iii) in the case of George Weston Bakeries (and a small number of other clients) and as disclosed to Oracle, acting as an agent for the client pursuant to a written contract, under which the client was required to have an active support contract with and license from Oracle which made it eligible to receive Oracle tax and regulatory updates. CedarCrestone further admits that, for its Retro clients that were paying for Oracle maintenance/support but who were running an unsupported version of PeopleSoft software, CedarCrestone customized lawfully downloaded Oracle tax and regulatory updates to work with older versions of a client's PeopleSoft software. Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

4.      CedarCrestone admits that it is a PeopleSoft licensee, and that, prior to Oracle's purported termination of its contracts with CedarCrestone, CedarCrestone was a "long-time Oracle partner." CedarCrestone further admits that it worked closely with Oracle on many joint projects. CedarCrestone invested millions of dollars over many years in co-development projects that benefited Oracle, and engaged in countless joint marketing ventures with Oracle. CedarCrestone further admits that the language quoted in paragraph 4 appears in certain iterations of Oracle's Ethics Code. With respect to the remaining allegations in paragraph 4, CedarCrestone denies these allegations.

5.      CedarCrestone admits that it was aware of Oracle's litigation against SAP and TomorrowNow. CedarCrestone further admits that it provided tax and regulatory support services to several former TomorrowNow customers in an attempt to keep these clients within the Oracle and PeopleSoft ecosystem. CedarCrestone denies that it attempted to buy TomorrowNow from SAP, and denies that it had any knowledge of the legality of TomorrowNow's business practices. CedarCrestone denies that it engaged in any wrongdoing with respect to services provided to former TomorrowNow customers. With respect to the remaining allegations in paragraph 5, CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny those allegations, and on that basis denies those allegations.

6.      CedarCrestone admits that in 2011, it sent a letter to Oracle disclosing a situation in which a client, George Weston Bakeries, had falsely warranted in a written contract with CedarCrestone that it had and would maintain a current maintenance and support contract with

Oracle.  Without notifying CedarCrestone, and in violation of its contract with CedarCrestone, George Weston Bakeries dropped its maintenance contract with Oracle.  CedarCrestone provided Retro tax and regulatory updates, which involved customizations to Oracle's tax and regulatory updates, to George Weston Bakeries after George Weston Bakeries dropped Oracle maintenance without notifying CedarCrestone.  As soon as CedarCrestone became aware of this situation, it notified Oracle and expressed willingness to discuss solutions to the situation.  With respect to the remaining allegations in paragraph 6, CedarCrestone denies the allegations.

7.     CedarCrestone admits that in 2012, it made the decision to stop offering tax and regulatory support for PeopleSoft software, and that it terminated all existing tax and regulatory support services.  CedarCrestone told Oracle about this decision in April 2012.  With respect to the remaining allegations in paragraph 7, CedarCrestone either denies the allegation or lacks knowledge or information sufficient to form a belief to admit or deny the allegation, and on that basis denies those allegations.

8.     Denied.

## II.     THE PARTIES

9.     CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny the allegations in paragraph 9, and on that basis denies those allegations.

10.     CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny the allegations in paragraph 10, and on that basis denies those allegations.

11.     Admitted.

## III.     JURISDICTION

12.     This paragraph consists of legal conclusions to which no response is required.

13.     This paragraph consists of legal conclusions to which no response is required.

14.     This paragraph consists of legal conclusions to which no response is required.

15.     CedarCrestone denies that it has committed any wrongful acts, intentional or otherwise, aimed at Oracle, or that anything CedarCrestone may have done has caused any harm to Oracle.  CedarCrestone is not contesting that this Court has personal jurisdiction over it with respect to this case.  The remaining statements in paragraph 15 consist of legal conclusions to

1   which no response is required.

2   **IV.     VENUE**

3          16.     This paragraph consists of legal conclusions to which no response is required.

4   CedarCrestone is not contesting that this judicial District is a proper venue for this action.

5          17.     CedarCrestone denies that it has committed any wrongful acts, intentional or

6   otherwise, aimed at Oracle, or that anything CedarCrestone may have done has caused any harm

7   to Oracle.  CedarCrestone is not contesting that this judicial District is a proper venue for this

8   action.  The remaining statements in paragraph 17 consist of legal conclusions to which no

9   response is required.

10  **V.     INTRADISTRICT ASSIGNMENT**

11         18.     CedarCrestone admits that Oracle has asserted a claim for copyright infringement.

12  The remaining statements in paragraph 18 consist of legal conclusions to which no response is

13  required.

14  **VI.     FACTUAL ALLEGATIONS**

15         19.     CedarCrestone admits that Oracle develops, manufactures, markets, distributes,

16  and services database, middleware, and applications software programs.  With respect to the

17  remaining allegations in paragraph 19, CedarCrestone lacks knowledge or information sufficient

18  to form a belief to admit or deny those allegations, and on that basis denies those allegations.

19         20.     CedarCrestone lacks knowledge or information sufficient to form a belief to admit

20  or deny the allegations in paragraph 20, and on that basis denies those allegations.

21         21.     CedarCrestone lacks knowledge or information sufficient to form a belief to admit

22  or deny the allegations in paragraph 21, and on that basis denies those allegations.

23         22.     CedarCrestone admits that Oracle sells the PeopleSoft family of applications,

24  which includes PeopleSoft Human Resources Management Software ("HRMS"); PeopleSoft

25  Financials and Supply Chain Management ("FSCM"); and PeopleSoft Student Administration.

26  With respect to the remaining allegations in paragraph 22, CedarCrestone lacks knowledge or

27  information sufficient to form a belief to admit or deny those allegations, and on that basis denies

28  those allegations.

4

768154.01

23. CedarCrestone admits the allegations in this paragraph, other than Oracle's claim that a customer who did not choose to purchase support services from CedarCrestone inevitably would purchase such services from Oracle, which allegation CedarCrestone denies. For many customers who use older versions of PeopleSoft applications, the tax and regulatory support and updates offered by Oracle are not even compatible with those customers' software. For other customers, the tax and regulatory support and updates they need are not offered by Oracle or, when they are offered, they are offered only as part of a larger maintenance and support offering that exceeds the scope of the client's needs. Accordingly, Oracle does not offer services that are a viable competitive alternative, much less the only such alternative, for customers who require tax and regulatory services such as those previously offered by CedarCrestone.

24. CedarCrestone admits that it offered two types of tax and regulatory support services. The "Retro" offering was provided to customers who continued to pay Oracle support, but who were running older versions of the PeopleSoft software that were unsupported by Oracle. Because Oracle's tax and regulatory updates did not work with older versions of PeopleSoft, these customers (who paid a significant amount of money to Oracle for annual support) got no value from these updates. CedarCrestone provided these clients with customizations to the Oracle updates, so that the updates could be applied to the client's application version. Separately, CedarCrestone's "Extend" offering was offered to clients who discontinued their Oracle support. CedarCrestone admits that it developed the Extend updates independently, without reproduction of or reference to Oracle-issue updates. Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

25. Admitted.

26. CedarCrestone admits that, at various times, it referred to its tax and regulatory support services and/or break/fix support services as falling under the "Maintain" umbrella. Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

27. Denied.

28. CedarCrestone admits that it is familiar with the terms of its own licenses with Oracle, but denies that it is generally familiar with PeopleSoft licenses. CedarCrestone has never

seen, and accordingly lacks sufficient information to admit or deny any allegations regarding the content of, most of the relevant PeopleSoft licenses.  Even as to those PeopleSoft licenses CedarCrestone has reviewed, those licenses and their terms vary significantly depending on when they were drafted and executed, and all such PeopleSoft licenses that CedarCrestone has reviewed in part contain a confidentiality clause that bars the licensee from sharing the entire license with third parties.  CedarCrestone admits that the language quoted in paragraph 28 appears in its proposal to the Oklahoma City Municipal Facilities Authority.  Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

29.     CedarCrestone admits that it is familiar with the terms of its own licenses with Oracle, but denies that it is generally familiar with PeopleSoft licenses.  CedarCrestone has never seen, and accordingly lacks sufficient information to admit or deny any allegations regarding the content of, most of the relevant PeopleSoft licenses.  Even as to those PeopleSoft licenses CedarCrestone has reviewed, those licenses and their terms vary significantly depending on when they were drafted and executed, and all such PeopleSoft licenses that CedarCrestone has reviewed in part contain a confidentiality clause that bars the licensee from sharing the entire license with third parties.  With respect to the quoted, but unattributed, language in paragraph 29, CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny that allegation, and on that basis denies the allegation.  Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

30.     CedarCrestone denies that the relevant PeopleSoft licenses all contain similar such restrictions.  While it lacks knowledge or information sufficient to form a belief to admit or deny the allegations in paragraph 30 as to all of the relevant PeopleSoft licenses, and on that basis denies those allegations, CedarCrestone is aware that PeopleSoft licenses drafted and executed in the 1990s are substantially different than more recent, or current, PeopleSoft licenses.

31.     CedarCrestone denies that it claimed to act as a customer's "designate" when providing tax and regulatory support services to customers.  CedarCrestone further denies that the relevant PeopleSoft licenses all contain similar language.  While it lacks knowledge or information sufficient to form a belief to admit or deny the allegations in paragraph 31 as to all of

6

768154.01

the relevant PeopleSoft licenses, and on that basis denies those allegations, CedarCrestone is aware that PeopleSoft licenses drafted and executed in the 1990s are substantially different than more recent, or current, PeopleSoft licenses.  With respect to the remaining allegations in paragraph 31, CedarCrestone denies those allegations.

32.     Denied.

33.     CedarCrestone admits that it installed some PeopleSoft software "environments" on its computer systems for the sole purpose of providing tax and regulatory support services to Oracle licensees.  With respect to the remaining allegations in paragraph 33, CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny those allegations, and on that basis denies those allegations.

34.     CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny the allegations in paragraph 34, and on that basis denies those allegations.

35.     Denied

36.     CedarCrestone denies that it infringed any of Oracle's copyrights or committed any wrongdoing against Oracle.  CedarCrestone also denies that it caused any harm to Oracle.  With respect to the remaining allegations in paragraph 36, CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny those allegations, and on that basis denies those allegations.

37.     Denied.

38.     Denied.

39.     Denied.

40.     CedarCrestone admits that the language quoted in paragraph 40 appears in a proposal to Tucson Unified School District.  Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

41.     CedarCrestone admits that its Retro tax support services involved providing customizations of Oracle PeopleSoft tax and regulatory updates, as permitted by the client's PeopleSoft software license and valid annual support contract.  Such customizations were necessary for the update to work with the client's licensed, but unsupported, PeopleSoft software.

Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

42.     CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny the allegations in paragraph 42, and on that basis denies those allegations.

43.     CedarCrestone admits that at least some Oracle tax and regulatory updates contain copyright notices.  However, CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny the allegations in paragraph 43 as to the particular notice in all of the relevant tax updates, and on that basis denies those allegations.

44.     Denied.

45.     Denied.

46.     Denied.

47.     Denied.

48.     Denied.

49.     CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny the allegations in paragraph 49, and on that basis denies those allegations.

50.     CedarCrestone admits that George Weston Bakeries was its customer, and that it sent a letter to Oracle dated August 19, 2011.  CedarCrestone further admits that it had a contract with George Weston Bakeries to provide Retro tax and regulatory support services.  Under this contract, George West Bakeries was required to have an active support contract with and license from Oracle which made it eligible to receive Oracle tax and regulatory updates.  In 2011, CedarCrestone learned that Oracle had dropped its Oracle support contract without notifying CedarCrestone, in violation of its contract with CedarCrestone.  CedarCrestone immediately disclosed this situation to Oracle and expressed its willingness to work with Oracle to resolve the situation.  Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

51.     Denied.

52.     CedarCrestone denies that has infringed any of Oracle's intellectual property and denies that it has committed any wrongful acts, intentional or otherwise, aimed at Oracle.  The remaining statements in paragraph 52 consist of legal conclusions to which no response is

required.

53.     This paragraph consists of legal conclusions to which no response is required.  To the extent this paragraph contains factual allegations, CedarCrestone denies those allegations.

54.     This paragraph consists of legal conclusions to which no response is required.  To the extent this paragraph contains factual allegations, CedarCrestone denies those allegations.

55.     CedarCrestone admits that its Retro tax support services involved providing customizations of Oracle PeopleSoft tax and regulatory updates, as permitted by the client's PeopleSoft software license and valid annual support contract.  Such customizations were necessary for the update to work with the client's licensed, but unsupported, PeopleSoft software.  Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

56.     Denied.

57.     CedarCrestone admits that its proposal to the Oklahoma City Municipal Facilities Authority contained the language quoted in paragraph 57.  Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

58.     CedarCrestone denies that its Extend updates were developed with any reference to Oracle's tax updates.  With respect to the remaining allegations in paragraph 58, CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny those allegations, and on that basis denies those allegations.

59.     CedarCrestone admits that it downloaded Oracle support materials from Oracle's website, acting as an agent for George Weston Bakeries pursuant to a written contract, under which George Weston Bakeries was required to have an active support contract with and license from Oracle which made it eligible to receive Oracle tax and regulatory updates.  Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

60.     Denied.

61.     This paragraph consists of legal conclusions to which no response is required.  To the extent this paragraph contains factual allegations, CedarCrestone denies those allegations.

62.     Denied.

63.     CedarCrestone admits that it was aware of Oracle's litigation against SAP and

9

TomorrowNow.  CedarCrestone further admits that it provided tax and regulatory support services to several former TomorrowNow customers in an attempt to keep these clients within the Oracle and PeopleSoft ecosystem.  CedarCrestone denies that it attempted to buy TomorrowNow from SAP, and denies that it had any knowledge of the legality of TomorrowNow's business practices.  CedarCrestone denies that it engaged in any wrongdoing with respect to services provided to former TomorrowNow customers.  With respect to the remaining allegations in paragraph 63, CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny those allegations, and on that basis denies those allegations.

64.     This paragraph consists of legal conclusions to which no response is required.  To the extent this paragraph contains factual allegations, CedarCrestone denies those allegations.  This paragraph consists of legal conclusions to which no response is required.  To the extent this paragraph contains factual allegations, CedarCrestone denies those allegations.

65.     Denied.

66.     Denied.

67.     Denied.

68.     CedarCrestone admits that George Weston Bakeries was its customer and that its website listed George Weston Bakeries as a "Client Success" as of September 4, 2012.  CedarCrestone further admits that its website contained the language quoted in paragraph 68 regarding its development services.  Except to the extent admitted above, CedarCrestone denies that allegations in this paragraph.

69.     CedarCrestone admits that the Tucson Unified School District purchased support services from CedarCrestone after receiving CedarCrestone's proposal.  Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

70.     CedarCrestone admits that Cal Yonker is the Chief Executive Officer of CedarCrestone.  CedarCrestone further admits that Mr. Yonker sent an email containing the language quoted in paragraph 70 to Tyler Prince.  Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

71.     Denied.

10

CEDARCRESTONE, INC.'S ANSWER TO ORACLE'S FIRST AMENDED COMPLAINT
Case No 3:12-cv-04626 (NC)

72.     CedarCrestone admits that the language quoted in paragraph 72 appeared in an email from Dorian Daley to Cal Yonker.  Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

73.     Denied.

74.     CedarCrestone admits that it entered into the identified contracts with Oracle on the stated dates.  Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

75.     CedarCrestone admits that, by a letter dated September 4, 2012, Oracle purported to terminate its contracts with CedarCrestone.  Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

76.     CedarCrestone admits that its OPN Agreement with Oracle contained the language quoted in paragraph 76.  The remainder of this paragraph consists of legal conclusions to which no response is required.

77.     CedarCrestone admits that its OPN Agreement with Oracle contained the language quoted in paragraph 77.  The remainder of this paragraph consists of legal conclusions to which no response is required.

78.     CedarCrestone admits that Oracle's "Ethics Code" contained the language quoted in paragraph 78.  The remainder of this paragraph consists of legal conclusions to which no response is required.

79.     CedarCrestone admits that Oracle's "Ethics Code" contained the language quoted in paragraph 79.  The remainder of this paragraph consists of legal conclusions to which no response is required.

80.     CedarCrestone admits that Oracle's "Ethics Code" contained the language quoted in paragraph 80.  The remainder of this paragraph consists of legal conclusions to which no response is required.

81.     CedarCrestone admits that Oracle's "Ethics Code" contained the language quoted in paragraph 81.  With respect to the remaining allegations in paragraph 81, CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny those allegations, and on

11

768154.01

that basis denies those allegations.

82.   CedarCrestone admits that the language quoted in paragraph 82 appears in its proposal to the Oklahoma City Municipal Facilities Authority.  Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

83.   CedarCrestone admits that the language quoted in paragraph 83 appears in its proposal to the Oklahoma City Municipal Facilities Authority.  Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

84.   CedarCrestone denies that any of its statements in its proposal to the Oklahoma City Municipal Facilities Authority were either false or misleading, or that CedarCrestone proposed to engage in services that were unauthorized under its or its clients' agreements with Oracle.  CedarCrestone further denies that it ever claimed, in that proposal or anywhere, that its licenses with Oracle provided immunity for intellectual property infringement.  CedarCrestone admits that the quoted language in paragraph 84 appears in Oracle's Ethics Code.  Except to the extent admitted or specifically denied above, CedarCrestone denies the allegations in this paragraph.

## First Claim for Relief
### Copyright Infringement
### (Claim by OIC)

85.   This paragraph does not state any facts requiring an admission or denial. CedarCrestone reasserts and hereby incorporates by reference its responses to the preceding paragraphs of the First Amended Complaint as though fully set forth herein.

86.   This paragraph consists of legal conclusions to which no response is required.  To the extent the paragraph makes factual allegations regarding Oracle's registration of its purported copyrights, CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny those allegations, and on that basis denies those allegations.

87.   This paragraph consists of legal conclusions to which no response is required.  To the extent the paragraph makes factual allegations, CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny those allegations, and on that basis denies those allegations.

12

768154.01

88.     This paragraph consists of legal conclusions to which no response is required.  To the extent the paragraph makes factual allegations, CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny those allegations, and on that basis denies those allegations.  To the extent this paragraph alleges that CedarCrestone infringed any Oracle copyrights, CedarCrestone denies that allegation.

89.     Denied.

90.     Denied.

91.     Denied.

92.     This paragraph consists of legal conclusions to which no response is required.  To the extent the paragraph makes factual allegations, CedarCrestone denies those allegations.

93.     This paragraph consists of legal conclusions to which no response is required.  To the extent the paragraph makes factual allegations, CedarCrestone denies those allegations.

94.     Denied.

95.     Denied.

96.     Denied.

97.     Denied.

### Second Claim for Relief
**Breach of Contract**
**(Claim by Oracle America)**

98.     This paragraph does not state any facts requiring an admission or denial. CedarCrestone reasserts and hereby incorporates by reference its responses to the preceding paragraphs of the First Amended Complaint as though fully set forth herein.

99.     CedarCrestone admits that it entered into the OPN Agreement with Oracle and that some iterations of the OPN Agreement purported to incorporate Oracle's "Ethics Code." CedarCrestone's agreements with Oracle speak for themselves, and the meaning of their terms is a legal question.

100.     CedarCrestone admits that it entered into a FUDA with Oracle and that some iterations of the FUDA purported to incorporate Oracle's "Ethics Code."  CedarCrestone's agreements with Oracle speak for themselves, and the meaning of their terms is a legal question.

13

768154.01

101.    This paragraph consists of legal conclusions to which no response is required.  To the extent the paragraph makes factual allegations, CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny those allegations, and on that basis denies those allegations.

102.    Denied.

103.    Denied.

104.    Denied.

105.    Denied.

106.    Denied.

### Third Claim for Relief
**Breach of Contract**
**(Claim by Oracle America)**

107.    This paragraph does not state any facts requiring an admission or denial. CedarCrestone reasserts and hereby incorporates by reference its responses to the preceding paragraphs of the First Amended Complaint as though fully set forth herein.

108.    CedarCrestone admits that it has downloaded Oracle support materials from Oracle's website, which are freely available to Oracle licensees, as it was (i) licensed or otherwise permitted to do by Oracle; (ii) permitted to do under the client's license with Oracle; and/or (iii) in the case of George Weston Bakeries (and a small number of other clients) and as disclosed to Oracle, acting as an agent for the client pursuant to a written contract, under which the client was required to have an active support contract with and license from Oracle which made it eligible to receive Oracle tax and regulatory updates.  With respect to the remaining allegations in paragraph 108, CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny those allegations, and on that basis denies those allegations.

109.    This paragraph consists of legal conclusions to which no response is required.  To the extent the paragraph makes factual allegations, CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny those allegations, and on that basis denies those allegations.

110.    Denied.

14

768154.01

111.   Denied.

**Fourth Claim for Relief**
**Unfair Competition – Cal. Bus. & Prof. Code § 17200**
**(Claim by Oracle America)**

112.   This paragraph does not state any facts requiring an admission or denial. CedarCrestone reasserts and hereby incorporates by reference its responses to the preceding paragraphs of the First Amended Complaint as though fully set forth herein.

113.   Denied.

114.   Denied.

115.   CedarCrestone admits that it entered into the OPN Agreement and FUDA, and that some iterations of those contracts purport to incorporate Oracle's "Ethics Code." CedarCrestone's agreements with Oracle speak for themselves, and the meaning of their terms is a legal question.  With respect to the remaining factual allegations in this paragraph, CedarCrestone lacks knowledge or information sufficient to form a belief to admit or deny those allegations, and on that basis denies those allegations.

116.   Denied.

117.   Denied.

118.   CedarCrestone admits that the OPN Agreement and FUDA identify Oracle as being located in Redwood City, California and Redwood Shores, California, respectively.  Except to the extent admitted above, CedarCrestone denies the allegations in this paragraph.

119.   Denied.

120.   This paragraph states legal conclusions to which no response is required.

**Fifth Claim for Relief**
**Intentional Interference with Prospective Economic Advantage**
**(Claim by Oracle America and OIC)**

121.   This paragraph does not state any facts requiring an admission or denial. CedarCrestone reasserts and hereby incorporates by reference its responses to the preceding paragraphs of the First Amended Complaint as though fully set forth herein.

122.   This paragraph states legal conclusions to which no response is required.  To the extent the paragraph makes factual allegations, CedarCrestone lacks knowledge or information

15

768154.01

1  sufficient to form a belief to admit or deny those allegations, and on that basis denies those

2  allegations.

3        123.    Denied.

4        124.    Denied.

5        125.    Denied.

6        126.    The paragraph states legal conclusions to which no response is required.  To the

7  extent the paragraph makes factual allegations, CedarCrestone denies those allegations.

8        127.    Denied.

9        128.    Denied.

10        129.    Denied.

11        130.    The paragraph states legal conclusions to which no response is required.  To the

12  extent the paragraph makes factual allegations, CedarCrestone denies those allegations.

13  <center>**PRAYER FOR RELIEF**</center>

14        Oracle's Prayer for Relief sets forth the statement of relief requested by Oracle, to which

15  no response is required.  CedarCrestone denies that Oracle is entitled to any of the requested relief

16  from CedarCrestone and denies any factual allegations contained in the Prayer for Relief.

17  <center>**GENERAL DENIAL AND AFFIRMATIVE DEFENSES**</center>

18        131.    CedarCrestone denies each and every allegation of the First Amended Complaint

19  not expressly admitted herein.  CedarCrestone further denies that it has violated the law and

20  denies that it has injured or damaged Oracle in any manner or amount whatsoever or at all, or that

21  Oracle has sustained or will sustain injuries or damages by reason of any act, omission or fault on

22  the part of CedarCrestone, its agents, servants or employees.  By alleging the Affirmative

23  Defenses set forth below, CedarCrestone is not agreeing or conceding that it has the burden of

24  proof on any of the issues raised in these defenses.  All such defenses are pled in the alternative,

25  and do not constitute an admission of liability or that Oracle is entitled to any relief whatsoever.

26

27

28

768154.01

### FIRST AFFIRMATIVE DEFENSE
#### *(Failure to Provide Notice and an Opportunity to Cure)*

132.    For its first affirmative defense, CedarCrestone alleges that Oracle lacks standing to bring any claim for breach of contract, or to terminate either the OPN Agreement or the FUDA, because Oracle failed to comply with the requirements of those contracts requiring written notice and an opportunity to cure prior to bringing any lawsuit or terminating either contract.

133.    Both section K of the OPN Agreement and section J of the FUDA provide that, if either party breaches a material term of the contracts, the non-breaching party must provide "written specification of the breach" and give the breaching party 30 days "to correct the breach." Only if notice is given and the breach is not cured within 30 days may the non-breaching party terminate either contract, as Oracle has purported to do here.

134.    Prior to purporting to terminate the OPN Agreement and FUDA on September 4, 2012 and filing this Complaint on September 5, 2012, Oracle never provided CedarCrestone with any written specification of CedarCrestone's alleged breaches, much less gave CedarCrestone the opportunity to cure those alleged breaches.  Accordingly, Oracle had no right to terminate either contract or pursue any action for breach of contract.  Contrary to the allegations in Oracle's Complaint, CedarCrestone committed no acts in violation of Oracle's Partner Code of Conduct and Business Ethics ("Ethics Code") that could justify immediate termination of either the OPN Agreement or FUDA.

### SECOND AFFIRMATIVE DEFENSE
#### *(Contractual Statute of Limitations)*

135.    For its second affirmative defense, CedarCrestone alleges that Oracle's claims are barred, in whole or in part, by applicable statutes of limitation.

136.    Both section U.4 of the OPN Agreement and section T.4 of the FUDA provide that, "[e]xcept for actions for nonpayment or breach of Oracle's proprietary rights, no action, regardless of form, arising out of or related to this agreement may be brought by either party more than two years after the cause of action has accrued."  Oracle filed this action on September 5, 2012.

768154.01

137.    As Oracle expressly pleads in paragraph 83 of the Complaint, and elsewhere, Oracle is asserting claims arising out of statements made and business practices disclosed by CedarCrestone in CedarCrestone's March 16, 2010 proposal to the Oklahoma City Municipal Facilities Authority.  CedarCrestone's proposal has been a matter of public record, and available to the general public over the Internet (at http://www.okc.gov/agendapub/cache/2/hflcdfrosh5z1h55o3lcpif5/119038210062012013732145.pdf), since at least June 2010.  Oracle did not assert any claims against CedarCrestone arising from this proposal until the filing of the Complaint in this action on September 5, 2012—close to two and a half years from the date of the proposal, and well over two years since the proposal was publicly posted.  Accordingly, any claims by Oracle arising out of the March 16, 2010 proposal, or the CedarCrestone business practices described therein, are within the scope of the limitations provisions in the OPN Agreement and FUDA.  To the extent Oracle's claims are not "actions for nonpayment or breach of Oracle's proprietary rights," those claims are time-barred.

138.    As Oracle expressly pleads in paragraph 69 of the Complaint, and elsewhere, Oracle is asserting claims arising out of statements made and business practices disclosed by CedarCrestone in CedarCrestone's October 22, 2009 proposal to the Tucson Unified School District.  Oracle had actual possession of this proposal, and actual notice of its contents, no later than August 5, 2010, when defendant SAP AG ("SAP") included the proposal as Exhibit A-6648 on its Trial Exhibit List in the Oracle v. SAP litigation in this District, Case No. 07-CV-1658 PJH (EDL) (N.D. Cal.).  In this instance, Oracle had actual notice of the CedarCrestone statements and business practices that are the basis of Oracle's claims more than two years prior to the filing of the Complaint on September 5, 2012.  Despite that actual knowledge, Oracle did not assert any claims against CedarCrestone until the filing of the Complaint in this action.  Accordingly, any claims by Oracle arising out of the October 22, 2009 proposal are within the scope of the limitations provisions in the OPN Agreement and FUDA.  To the extent Oracle's claims are not "actions for nonpayment or breach of Oracle's proprietary rights," those claims are time-barred.

768154.01

### THIRD AFFIRMATIVE DEFENSE
### *(Waiver)*

139.    For its third affirmative defense, CedarCrestone alleges that Oracle has waived, settled, satisfied, or extinguished its claims, which waiver, settlement, satisfaction, or extinguishment was supported by adequate consideration.

140.    As Oracle expressly pleads in paragraph 69 of the Complaint, and elsewhere, Oracle is asserting claims arising out of statements made and business practices disclosed by CedarCrestone in CedarCrestone's October 22, 2009 proposal to the Tucson Unified School District.  Oracle had actual possession of this proposal, and actual knowledge of its contents, no later than August 5, 2010, when defendant SAP included the proposal as Exhibit A-6648 on its Trial Exhibit List in the Oracle v. SAP litigation.  Despite having notice of CedarCrestone's statements and business practices as of August 5, 2010, Oracle did not assert any claims against CedarCrestone until the filing of the Complaint in this action more than two years later, on September 5, 2012.

141.    Similarly, as Oracle expressly pleads in paragraph 83 of the Complaint, and elsewhere, Oracle is asserting claims arising out of statements made and business practices disclosed by CedarCrestone in CedarCrestone's March 16, 2010 proposal to the Oklahoma City Municipal Facilities Authority.  CedarCrestone's proposal has been a matter of public record, and available to the general public over the Internet (at http://www.okc.gov/agendapub/cache/2/hflcdfrosh5z1h55o3lcpif5/11903821006201201 3732145.pdf), since at least June 2010.  Moreover, Oracle had actual possession of this proposal, and actual notice of its contents, no later than July 28, 2011, when CedarCrestone produced the proposal, among other documents, to Oracle in response to a subpoena in the pending Oracle v. Rimini Street litigation, Case No. 2:10-CV-0106-LRH-PAL (D. Nev.).  Despite having notice of CedarCrestone's statements and business practices at least since July 28, 2011, if not since June 2010, Oracle did not assert any claims against CedarCrestone until the filing of the Complaint in this action more than a year later, on September 5, 2012.

768154.01

142.     Finally, as Oracle expressly pleads in paragraph 50 of the Complaint, and elsewhere, Oracle is asserting claims arising out of statements made and an event disclosed by CedarCrestone in CedarCrestone's August 19, 2011 letter to Oracle regarding CedarCrestone's work for George Weston Bakeries.  Despite having notice of the relevant statements and events no later than August 19, 2011, Oracle did not assert any claims against CedarCrestone until the filing of the Complaint in this action on September 5, 2012.

143.     Despite having knowledge of all the purported wrongdoing by CedarCrestone alleged in the Complaint no later than August 19, 2011—and much of the alleged wrongdoing for more than two years—Oracle continued to do business with CedarCrestone until it purported to terminate the OPN Agreement and FUDA on September 4, 2012.  Indeed, despite having knowledge of CedarCrestone's purported wrongdoing, Oracle renewed both the OPN Agreement and the FUDA—in November 2011 and April 2012, respectively.  Moreover, in the spring of 2012, Oracle took further affirmative acts to show support for CedarCrestone and its business practices, by selecting CedarCrestone as an Oracle North America Public Sector SOA Pillar Partner and accepting CedarCrestone into the Oracle Invested Partner Community for FMW.  Through all these affirmative acts taken over a period of months, during which Oracle failed to assert any claims against CedarCrestone, Oracle unambiguously communicated to CedarCrestone, with full knowledge of all material facts, that it either saw nothing wrong with CedarCrestone's statements and business practices or that it was affirmatively electing to waive any claim it could have asserted stemming from those statements or business practices.

144.     Oracle's conduct was so inconsistent with any intent to enforce the copyrights or contractual rights it is purporting to enforce in this action that any reasonable contractual partner reasonably would have come to believe that Oracle was relinquishing any rights it could have pursued.  In response to Oracle's actions, including but not limited to the renewal of the OPN Agreement and FUDA, CedarCrestone reasonably and actually believed that Oracle had no substantive objection to any of the statements or business practices that form the basis of Oracle's claims in this action.

CEDARCRESTONE, INC.'S ANSWER TO ORACLE'S FIRST AMENDED COMPLAINT
Case No 3:12-cv-04626 (NC)

768154.01

## FOURTH AFFIRMATIVE DEFENSE
### *(Laches)*

145.    For its fourth affirmative defense, CedarCrestone alleges that Oracle's claims are barred, in whole or in part, by the doctrine of laches.

146.    As Oracle expressly pleads in paragraph 69 of the Complaint, and elsewhere, Oracle is asserting claims arising out of statements made and business practices disclosed by CedarCrestone in CedarCrestone's October 22, 2009 proposal to the Tucson Unified School District.  Oracle had actual possession of this proposal, and actual knowledge of its contents, no later than August 5, 2010, when defendant SAP included the proposal as Exhibit A-6648 on its Trial Exhibit List in the Oracle v. SAP litigation.  Despite having notice of CedarCrestone's statements and business practices as of August 5, 2010, Oracle did not assert any claims against CedarCrestone until the filing of the Complaint in this action more than two years later, on September 5, 2012.

147.    Similarly, as Oracle expressly pleads in paragraph 83 of the Complaint, and elsewhere, Oracle is asserting claims arising out of statements made and business practices disclosed by CedarCrestone in CedarCrestone's March 16, 2010 proposal to the Oklahoma City Municipal Facilities Authority.  CedarCrestone's proposal has been a matter of public record, and available to the general public over the Internet (at http://www.okc.gov/agendapub/cache/2/hflcdfrosh5z1h55o3lcpif5/119038210062012013732145.pdf), since at least June 2010.  Moreover, Oracle had actual possession of this proposal, and actual notice of its contents, no later than July 28, 2011, when CedarCrestone produced the proposal, among other documents, to Oracle in response to a subpoena in the pending Oracle v. Rimini Street litigation.  Despite having notice of CedarCrestone's statements and business practices at least since July 28, 2011, if not since June 2010, Oracle did not assert any claims against CedarCrestone until the filing of the Complaint in this action more than a year later, on September 5, 2012.

148.    Finally, as Oracle expressly pleads in paragraph 50 of the Complaint, and elsewhere, Oracle is asserting claims arising out of statements made and an event disclosed by

768154.01

CedarCrestone in CedarCrestone's August 19, 2011 letter to Oracle regarding CedarCrestone's work for George Weston Bakeries.  Despite having notice of the relevant statements and event no later than August 19, 2011, Oracle did not assert any claims against CedarCrestone until the filing of the Complaint in this action on September 5, 2012.

149.    Despite having knowledge of all the purported wrongdoing by CedarCrestone alleged in the Complaint no later than August 19, 2011—and much of the alleged wrongdoing for more than two years—Oracle continued to do business with CedarCrestone until it purported to terminate the OPN Agreement and FUDA on September 4, 2012.  Indeed, despite having knowledge of CedarCrestone's purported wrongdoing, Oracle renewed both the OPN Agreement and the FUDA—in November 2011 and April 2012, respectively.  Moreover, in the spring of 2012, Oracle took further affirmative acts to show support for CedarCrestone and its business practices, by selecting CedarCrestone as an Oracle North America Public Sector SOA Pillar Partner and accepting CedarCrestone into the Oracle Invested Partner Community for FMW.  Through all these affirmative acts taken over a period of months, during which Oracle failed to assert any claims against CedarCrestone, Oracle unambiguously communicated to CedarCrestone, with full knowledge of all material facts, that it either saw nothing wrong with CedarCrestone's statements and business practices or that it was affirmatively electing to waive any claim it could have asserted stemming from those statements or business practices or events.

150.    Oracle's delay in raising any objection to CedarCrestone's alleged conduct, and in filing this lawsuit, was unreasonable and inexcusable and has prejudiced CedarCrestone.  As a result of Oracle's willful inaction, and the assurances Oracle provided to CedarCrestone by expressing a willingness to continue working with CedarCrestone, and actually renewing its contracts and partnerships with CedarCrestone, CedarCrestone elected to renew those contracts and partnerships and to continue spending time and money providing and expanding services to Oracle software licensees, assisting Oracle with activities designed to drive license revenue to Oracle, and investing in co-development and marketing activities.  CedarCrestone further relied on its continuing status as a certified Oracle partner in continuing to allocate resources to its existing initiatives with Oracle, including co-development, demonstrating Oracle software for

1   prospective Oracle licensees, and developing solutions and proposals on other contracts, the

2   success of some of which bids was expressly contingent on CedarCrestone remaining an Oracle

3   partner.  CedarCrestone devoted resources to servicing those existing customers who required

4   Oracle partner status, preparing proposals for future work for such customers, and planning to

5   staff those future projects.  All of these commitments forced CedarCrestone to divert its scarce

6   resources from other potentially lucrative business lines and projects.

7                        **FIFTH AFFIRMATIVE DEFENSE**
                              **_(Equitable Estoppel)_**

8

9   151.    For its fifth affirmative defense, CedarCrestone alleges that Oracle's claims are

10  barred, in whole or in part, by the doctrine of equitable estoppel.

11  152.    As Oracle expressly pleads in paragraph 69 of the Complaint, and elsewhere,

12  Oracle is asserting claims arising out of statements made and business practices disclosed by

13  CedarCrestone in CedarCrestone's October 22, 2009 proposal to the Tucson Unified School

14  District.  Oracle had actual possession of this proposal, and actual knowledge of its contents, no

15  later than August 5, 2010, when defendant SAP included the proposal as Exhibit A-6648 on its

16  Trial Exhibit List in the Oracle v. SAP litigation.  Despite having notice of CedarCrestone's

17  statements and business practices as of August 5, 2010, Oracle did not assert any claims against

18  CedarCrestone until the filing of the Complaint in this action more than two years later, on

19  September 5, 2012.

20  153.    Similarly, as Oracle expressly pleads in paragraph 83 of the Complaint, and

21  elsewhere, Oracle is asserting claims arising out of statements made and business practices

22  disclosed by CedarCrestone in CedarCrestone's March 16, 2010 proposal to the Oklahoma City

23  Municipal Facilities Authority.  CedarCrestone's proposal has been a matter of public record, and

24  available to the general public over the Internet (at

25  http://www.okc.gov/agendapub/cache/2/hflcdfrosh5z1h55o3lcpif5/1190382100620120137321 45.

26  pdf), since at least June 2010.  Moreover, Oracle had actual possession of this proposal, and

27  actual notice of its contents, no later than July 28, 2011, when CedarCrestone produced the

28  proposal, among other documents, to Oracle in response to a subpoena in the pending Oracle v.

Rimini Street litigation.  Despite having notice of CedarCrestone's statements and business practices at least since July 28, 2011, if not since June 2010, Oracle did not assert any claims against CedarCrestone until the filing of the Complaint in this action more than a year later, on September 5, 2012.

154.   Finally, as Oracle expressly pleads in paragraph 50 of the Complaint, and elsewhere, Oracle is asserting claims arising out of statements made and an event disclosed by CedarCrestone in CedarCrestone's August 19, 2011 letter to Oracle regarding CedarCrestone's work for George Weston Bakeries.  Despite having notice of the relevant statements and event no later than August 19, 2011, Oracle did not assert any claims against CedarCrestone until the filing of the Complaint in this action on September 5, 2012.

155.   Despite having knowledge of all the purported wrongdoing by CedarCrestone alleged in the Complaint no later than August 19, 2011—and much of the alleged wrongdoing for more than two years—Oracle continued to do business with CedarCrestone until it purported to terminate the OPN Agreement and FUDA on September 4, 2012.  Indeed, despite having knowledge of CedarCrestone's purported wrongdoing, Oracle renewed both the OPN Agreement and the FUDA—in November 2011 and April 2012, respectively.  Moreover, in the spring of 2012, Oracle took further affirmative acts to show support for CedarCrestone and its business practices, by selecting CedarCrestone as an Oracle North America Public Sector SOA Pillar Partner and accepting CedarCrestone into the Oracle Invested Partner Community for FMW.  Through all these affirmative acts taken over a period of months, during which Oracle failed to specify or assert any claims against CedarCrestone, Oracle unambiguously communicated to CedarCrestone, with full knowledge of all material facts, that it either saw nothing wrong with CedarCrestone's statements and business practices or that it was affirmatively electing to waive any claim it could have asserted stemming from those statements or business practices.

156.   CedarCrestone had a right to assume, and did assume, that Oracle had concluded that none of CedarCrestone's business practices or acts constituted any violation of Oracle's rights.  Prior to September 4, 2012, when it abruptly terminated CedarCrestone's partner status, Oracle had never given CedarCrestone any indication that Oracle considered any of the acts

alleged in the Complaint to constitute copyright infringement, breach of contract, unfair business practices, or any other civil wrong.  As a result of Oracle's willful inaction, and the assurances Oracle provided to CedarCrestone by expressing a willingness to continue working with CedarCrestone, and actually renewing its contracts and partnerships with CedarCrestone, CedarCrestone elected to renew those contracts and partnerships and to continue spending time and money providing and expanding services to Oracle software licensees, assisting Oracle with activities designed to drive license revenue to Oracle, and investing in co-development and marketing activities.  CedarCrestone further relied on its continuing status as a certified Oracle partner in continuing to allocate resources to its existing initiatives with Oracle, including co-development, demonstrating Oracle software for prospective Oracle licensees, and developing solutions and proposals on other contracts, the success of some of which bids was expressly contingent on CedarCrestone remaining an Oracle partner.  CedarCrestone devoted resources to servicing those existing customers who required Oracle partner status, preparing proposals for future work for such customers, and planning to staff those future projects.  All of these commitments forced CedarCrestone to divert its scarce resources from other potentially lucrative business lines and projects.

### SIXTH AFFIRMATIVE DEFENSE
*(Implied License)*

157.   For its sixth affirmative defense, CedarCrestone alleges that Oracle's claims are barred, in whole or in part, by the doctrine of implied license.

158.   As Oracle expressly pleads in paragraph 69 of the Complaint, and elsewhere, Oracle is asserting claims arising out of statements made and business practices disclosed by CedarCrestone in CedarCrestone's October 22, 2009 proposal to the Tucson Unified School District.  Oracle had actual possession of this proposal, and actual knowledge of its contents, no later than August 5, 2010, when defendant SAP included the proposal as Exhibit A-6648 on its Trial Exhibit List in the Oracle v. SAP litigation.  Despite having notice of CedarCrestone's statements and business practices as of August 5, 2010, Oracle did not assert any claims against CedarCrestone until the filing of the Complaint in this action more than two years later, on

768154.01

September 5, 2012.

159.    Similarly, as Oracle expressly pleads in paragraph 83 of the Complaint, and elsewhere, Oracle is asserting claims arising out of statements made and business practices disclosed by CedarCrestone in CedarCrestone's March 16, 2010 proposal to the Oklahoma City Municipal Facilities Authority.  CedarCrestone's proposal has been a matter of public record, and available to the general public over the Internet (at http://www.okc.gov/agendapub/cache/2/hflcdfrosh5z1h55o3lcpif5/119038210062012013732145.pdf), since at least June 2010.  Moreover, Oracle had actual possession of this proposal, and actual notice of its contents, no later than July 28, 2011, when CedarCrestone produced the proposal, among other documents, to Oracle in response to a subpoena in the pending Oracle v. Rimini Street litigation.  Despite having notice of CedarCrestone's statements and business practices at least since July 28, 2011, if not since June 2010, Oracle did not assert any claims against CedarCrestone until the filing of the Complaint in this action more than a year later, on September 5, 2012.

160.    Finally, as Oracle expressly pleads in paragraph 50 of the Complaint, and elsewhere, Oracle is asserting claims arising out of statements made and an event disclosed by CedarCrestone in CedarCrestone's August 19, 2011 letter to Oracle regarding CedarCrestone's work for George Weston Bakeries.  Despite having notice of the relevant statements and events no later than August 19, 2011, Oracle did not assert any claims against CedarCrestone until the filing of the Complaint in this action on September 5, 2012.

161.    Despite having knowledge of all the purported wrongdoing by CedarCrestone alleged in the Complaint no later than August 19, 2011—and much of the alleged wrongdoing for more than two years—Oracle continued to do business with CedarCrestone until it purported to terminate the OPN Agreement and FUDA on September 4, 2012.  Indeed, despite having knowledge of CedarCrestone's purported wrongdoing, Oracle renewed both the OPN Agreement and the FUDA—in November 2011 and April 2012, respectively.  Moreover, in the spring of 2012, Oracle took further affirmative acts to show support for CedarCrestone and its business practices, by selecting CedarCrestone as an Oracle North America Public Sector SOA Pillar

26

Partner and accepting CedarCrestone into the Oracle Invested Partner Community for FMW. Through all these affirmative acts taken over a period of months, during which Oracle failed to assert any claims against CedarCrestone, Oracle unambiguously communicated to CedarCrestone, with full knowledge of all material facts, that it either saw nothing wrong with CedarCrestone's statements and business practices or that it was affirmatively electing to waive any claim it could have asserted stemming from those statements or business practices.

162.    The totality of Oracle's and CedarCrestone's conduct, in negotiating and then agreeing to continue their long-standing contractual relationship, demonstrates Oracle's intent to grant CedarCrestone permission to provide assurances to customers regarding the beneficial effects of CedarCrestone's partnerships with Oracle, and to provide the alleged types of services to CedarCrestone customers that Oracle now contends violated its rights.  As a result of Oracle's conduct, CedarCrestone reasonably inferred that Oracle had consented to CedarCrestone continuing to do the alleged acts that Oracle now contends violate its rights.

### SEVENTH AFFIRMATIVE DEFENSE
#### (De Minimis Use of Copyrighted Materials)

163.    For its seventh affirmative defense, CedarCrestone alleges that, even if Oracle could satisfy the other elements of its claim for copyright infringement, any use CedarCrestone made of Oracle copyrighted material was either authorized by Oracle or, to the extent it was unauthorized, was so trivial, insignificant, and harmless to Oracle that it is not actionable as copyright infringement.

164.    The conduct Oracle asserts to be unlawful in its Complaint is trivial.  First, Oracle asserts that, in one instance, CedarCrestone mistakenly provided tax and regulatory software updates to an Oracle licensee whose right to receive those updates had expired because it had declined to continue making annual payments to Oracle for a maintenance and support contract, which in some cases would have included a right to such updates.  There is no dispute that, at the start of its relationship with CedarCrestone, the client, George Weston Bakeries, had a valid and current contract in place for Oracle support, and thus was entitled to receive Oracle update material.  There is also no dispute that George Weston Bakeries's contract with CedarCrestone

27

768154.01

1   required George Weston Bakeries to have a current contract with Oracle and to notify

2   CedarCrestone of any change in the status of its contract with Oracle.  Thereafter, George Weston

3   Bakeries dropped Oracle support, but failed to notify CedarCrestone of having done so.  As soon

4   as CedarCrestone learned that George Weston Bakeries had dropped Oracle support, it

5   immediately stopped providing updates to George Weston Bakeries, recommended that George

6   Weston Bakeries contract directly with Oracle for its support needs (including for retroactive

7   payment for updates it had received after the expiration of its support contract with Oracle), and

8   self-reported all these facts to Oracle.

9        165.    Second, Oracle contends that CedarCrestone copied Oracle software onto

10  CedarCrestone's system, whereas the Oracle license requires that software to be maintained on

11  the client's system.  To begin with, CedarCrestone's relationships with its customers and those

12  customers' obligations to Oracle are governed by a variety of licenses with Oracle (and with

13  Oracle's predecessor PeopleSoft), and not all such licenses contain any limitation that the Oracle

14  software be maintained only on the client's system.  Likewise, many if not all of those licenses

15  permit Oracle clients themselves to make an unlimited number of copies of Oracle software for

16  the client's own use, and those licenses are silent as to where those copies may be maintained.  In

17  any event, Oracle is not disputing that CedarCrestone provided any services to any client that it

18  was not entitled to provide, or even that CedarCrestone could have worked remotely for clients on

19  a copy of software maintained on the client's system; Oracle is complaining only that

20  CedarCrestone did work for clients from a copy of software maintained in the wrong location.

21       166.    Third, Oracle complains that CedarCrestone used a single copy of Oracle software

22  as the basis for its work for various clients, rather than separately downloading the exact same

23  Oracle program repeatedly.  Oracle does not dispute, nor could it, that CedarCrestone could have

24  downloaded multiple instances of the same Oracle software from Oracle and, in doing so,

25  possessed, and used for the benefit of CedarCrestone clients, the same number of copies of the

26  identical software.

27       167.    Oracle's complaints of copyright infringement are form over substance and did not

28  affect any impairment of Oracle's copyrights, ability to license those copyrights, or revenue

derived from such licensing.  Indeed, for many of the clients for whom CedarCrestone has provided tax and regulatory support, Oracle did not even provide the tax or regulatory support services that CedarCrestone provided, and consequently customers who used and relied on CedarCrestone's support services would not have turned to Oracle for competing services even if CedarCrestone had offered no services at all.  Accordingly, even if CedarCrestone did the acts Oracle complains it did, any unauthorized use of Oracle copyrighted materials by CedarCrestone was de minimis and does not constitute actionable copyright infringement.

### EIGHTH AFFIRMATIVE DEFENSE
### *(Fair Use)*

168.    For its eighth affirmative defense, CedarCrestone alleges that, even if Oracle could satisfy the other elements of its claim for copyright infringement, any use CedarCrestone made of Oracle's copyrighted material was a fair use that is not actionable.  Among other factors supporting a finding of fair use, Oracle is complaining about purely technical, non-substantive alleged violations of its licenses.  It does not contend, nor could it, that CedarCrestone was barred from providing the identical support services it provided on the identical software; it contends merely that CedarCrestone did this work on copies of software maintained on CedarCrestone's system rather than doing so remotely on identical copies maintained on the client's system.  Similarly, Oracle asserts that CedarCrestone violated the law by downloading a single copy of software from Oracle, then copying it for multiple clients (all of whom were entitled to download a copy of that exact software), rather than downloading the same software from Oracle multiple times.  To the extent CedarCrestone engaged in any unauthorized copying, it was minuscule in quantity and entirely non-substantive.  Moreover, any such unauthorized copying had no effect whatsoever on the market for Oracle's software licensing business, and Oracle does not offer any specific facts contending otherwise.  As discussed above, many of CedarCrestone's clients who received CedarCrestone tax and regulatory support used older versions of Oracle applications, for which Oracle no longer provided the sort and extent of software support services that CedarCrestone provided.  Consequently, many of the customers who used and relied on CedarCrestone's support services would not have turned to Oracle for competing services even if

29

CedarCrestone had offered no services at all, so the acts by CedarCrestone that Oracle alleges in its complaint had no effect on Oracle's licensing business or the value of the copyrighted material at issue.

<div align="center">

**NINTH AFFIRMATIVE DEFENSE**
*(No Material Breach)*

</div>

169.    For its ninth affirmative defense, CedarCrestone alleges that, even if CedarCrestone did breach either the OPN Agreement or the FUDA through the conduct alleged in Oracle's Complaint (which alleged breach CedarCrestone denies), any such breach was not material and does not justify termination of either contract.

170.    For the reasons set forth above in CedarCrestone's foregoing affirmative defenses, Oracle is complaining about trivial purported violations of its licenses, to the extent those licenses even contain the restrictions Oracle is attempting to enforce.  To begin with, CedarCrestone's relationships with its customers and with Oracle are governed by a variety of licenses and other agreements with Oracle (and with Oracle's predecessor PeopleSoft).  Not all such licenses and agreements contain any limitation that the Oracle software be maintained only on the client's system.  Likewise, many if not all of those licenses and agreements permit Oracle clients themselves to make an unlimited number of copies of Oracle software for the client's own use, and those licenses and agreements are silent as to where those copies must be maintained.

171.    Even assuming the relevant licenses do contain the restrictions Oracle is attempting to enforce, the conduct by CedarCrestone that Oracle is alleging violated its rights was trivial and did not impair the consideration Oracle received under the licensing contracts.  Oracle does not contend, nor could it, that CedarCrestone was barred from providing the identical support services it provided on the identical software; it contends merely that CedarCrestone did this work on copies of software maintained on CedarCrestone's system rather than doing so remotely on identical copies maintained on the client's system.  Similarly, Oracle asserts that CedarCrestone violated the law by downloading a single copy of software from Oracle, then copying it for multiple clients, rather than downloading multiple copies of the identical software from Oracle.  Even if Oracle could prove CedarCrestone engaged in any unauthorized copying, it

<div align="center">30</div>

1   would be minuscule in quantity and entirely non-substantive.

2   172.   Moreover, any such unauthorized copying had no effect whatsoever on the market

3   for Oracle's software licensing business, and Oracle does not offer any specific facts contending

4   otherwise.  CedarCrestone offered two types of tax-and-regulatory-update services.  First, in

5   CedarCrestone's Retro Support service, CedarCrestone, acting as an agent of an

6   Oracle/PeopleSoft licensee, would customize a tax and regulatory update, which the licensee had

7   paid Oracle to receive.  The Retro Support service provided a client with a usable update that

8   would work retroactively with the client's fully licensed (but unsupported by Oracle) PeopleSoft

9   applications.  Second, in CedarCrestone's Extend Support service, CedarCrestone would

10  independently develop tax and regulatory updates of a sort that Oracle provided, if at all, only as

11  part of a much larger, more expensive support package.  Cedar Crestone's Retro Support services

12  were complementary to Oracle's offerings and required the client to maintain Oracle support.

13  Similarly, its Extend Support services filled a small need that Oracle did not offer independently,

14  but only in the context of a larger, more expensive support package, which many clients could not

15  afford and had elected not to purchase.  In fact, both CedarCrestone's Retro and Extend services

16  provided direct benefits to Oracle.  In the case of Retro, these services kept clients on Oracle

17  support contracts, thereby preserving Oracle's maintenance revenue, even though Oracle no

18  longer actively supported the client's software.  In the case of Extend, CedarCrestone's services

19  allowed clients to keep using Oracle applications while staying current regarding their tax and

20  regulatory obligations, notwithstanding Oracle's refusal to design a support package that met

21  these clients' needs.

22  173.   As to at least some of the CedarCrestone clients at issue, Oracle did not even

23  provide the sort and extent of tax and regulatory support services that CedarCrestone provided,

24  and consequently customers who used and relied on CedarCrestone's tax and regulatory support

25  services could not and would not have turned to Oracle for competing services even if

26  CedarCrestone had offered no services at all.  Even if Oracle could plead and prove actual harm

27  stemming from CedarCrestone's alleged conduct, that harm plainly would have been

28  compensable in damages, such as in the form of a somewhat enhanced licensing fee, and thus is

31

768154.01

not a material breach of either the OPN Agreement or FUDA that could justify termination.

## TENTH AFFIRMATIVE DEFENSE
### *(Failure to Mitigate)*

174.   For its tenth affirmative defense, CedarCrestone alleges that Oracle has failed to take any steps to mitigate any damages it might have suffered as the result of the alleged misconduct in this case.  For example, Oracle alleges that CedarCrestone breached its contracts with Oracle and committed unethical acts by providing Oracle tax and regulatory updates to George Weston Bakeries, a former Oracle licensee whose support contract with Oracle had lapsed after it began receiving updates from CedarCrestone.  CedarCrestone had no knowledge that George Weston Bakeries's support contract, which allowed George Weston Bakeries to receive Oracle updates, had lapsed, and relied on the express requirement in its contract with George Weston Bakeries that required George Weston Bakeries to maintain a current license with Oracle and to notify CedarCrestone if it no longer had such a license.  Upon discovering that George Weston Bakeries had canceled its Oracle support contract, CedarCrestone immediately stopped providing any Oracle materials to George Weston Bakeries, terminated its contract with George Weston Bakeries, and self-reported this inadvertent mistake to Oracle in an August 19, 2011 letter.  Since August 19, 2011, Oracle has taken no steps to recover the value of the materials George Weston Bakeries received without permission, either from George Weston Bakeries directly or from CedarCrestone as George Weston Bakeries's agent.  It would be trivially easy for Oracle to calculate the value of the Oracle materials at issue; Oracle maintains fee schedules that set values for all the materials at issue.  In fact, for more than a year—until purporting to terminate the OPN Agreement and FUDA on September 4, 2012—Oracle never even suggested to CedarCrestone that it had done anything wrong or actionable with respect to George Weston Bakeries.  Instead, it affirmatively chose to renew both the OPN Agreement and FUDA with CedarCrestone after learning of George Weston Bakeries's misconduct.

///

///

///

CEDARCRESTONE, INC.'S ANSWER TO ORACLE'S FIRST AMENDED COMPLAINT
Case No 3:12-cv-04626 (NC)

768154.01

## ELEVENTH AFFIRMATIVE DEFENSE
### *(Reservation of Rights to Plead Additional Defenses)*

175.    For its eleventh affirmative defense, CedarCrestone alleges that it has insufficient knowledge and information upon which to form a basis as to whether it may have additional, as yet unstated, separate defenses available. CedarCrestone reserves the right to amend this Answer to add, delete, supplement, or modify these defenses based upon legal theories that may be or will be divulged through clarification of Oracle's Complaint, through discovery, or through further legal analysis of Oracle's position in this litigation.

Dated: July 17, 2013                                KEKER & VAN NEST LLP

                                      By:    */s/ Christa Anderson*
                                             CHRISTA M. ANDERSON
                                             DANIEL PURCELL

                                             Attorneys for Defendant
                                             CEDARCRESTONE, INC.

CEDARCRESTONE, INC.'S ANSWER TO ORACLE'S FIRST AMENDED COMPLAINT
Case No 3:12-cv-04626 (NC)

768154.01